MARVIN, Judge.
We granted defendant’s writ to review his conviction for speeding. LRS 32:61. He urges five assignments of error that relate to his request in a “bill of particulars” for information about the radar unit used to measure the speed of his vehicle, the reliability of the particular radar unit, and the sufficiency of the evidentiary foundation laid for testimony of state troopers about the speed reading observed on the radar unit. Finding no merit in the assignments, we affirm.
FACTS
At about 10:30 a.m. on August 30, 1985, Troopers Givens and Ladet were patrolling southbound on Highway 167 in Winn Parish when they observed defendant’s northbound 1978 Chevrolet passing a large northbound tractor-trailer. Trooper Givens activated the radar device in his patrol car as defendants’ car was passing the truck and obtained a reading of 67 miles per hour. The troopers then pursued, stopped, and cited defendant. The citation indicates defendant’s speed as 65 mph and that “subject stated he was going approx. 60 mph ... veh. clocked at 67, citation written at 65.” The citation was “issued” by Trooper Givens and “witnessed” by Trooper Ladet.
Defendant was arraigned and pleaded not guilty on October 15. Trial was set for November 18. Defendant filed what he styled as an “application for bill of particulars” on October 23, requesting that the State furnish him the following:
*713 1. ... the make, model, and serial number of the radar unit;
2. The date of the calibration and certification of calibration of the unit last made before the date of defendant’s arrest;
3. The name and address of the person who made the inspection and calibration of the unit; and
4. The name of the person certifying the calibration of the unit and the date of such certification, and oyer of the certification. [sic]
The court ordered that the State furnish these materials by November 4, on which date the State appeared and offered only a copy of the citation issued defendant. Defendant objected to the State’s failure to comply with the order and the court ordered the State to “secure the information as available” and submit it to defendant by November 11.
The State did not provide defendant any additional information until the date of trial, November 18, when it offered only a November 8 letter from the district attorney’s office to Trooper Givens informing him that he would be subpoenaed for the trial and instructing him to bring to court the materials and information requested in the “bill of information.” The State then orally moved for and was granted a continuance presumably because it had not yet obtained the remainder of the requested materials. Defendant unsuccessfully sought a dismissal on the basis of the State’s failure to furnish the information.
The trial was reset for December 9. The minutes for that date indicate the State furnished the “remaining answers” to the bill. Defendant moved for a continuance, which was denied. After Trooper Givens testified, court was recessed until December 16, when defendant moved for a continuance because Trooper Ladet was not present to testify. Finding no record of Trooper Ladet’s subpoena, the court denied the motion. The case was then submitted and defendant was found guilty and sentenced to pay a fine of $50, plus court costs, in default of which, to serve five days in the parish jail.
On December 19, defendant moved for a new trial, contending that the State had not laid a proper foundation for admission of the radar speed indication and that Trooper Ladet had, in fact, been subpoenaed to appear at the December 9 trial. The motion was granted, for reasons not in the record, after a hearing on January 20, 1986. Subpoenas were issued for Troopers Givens and Ladet to appear at a new trial, set for February 3.
Defendant was found guilty as charged at the new trial and was sentenced as in the first trial.
ASSIGNMENT NO. 1
Defendant complains that the trial court should have granted his motion for dismissal made on the November 18 trial date because the State failed to comply with the court’s original order to supply him with the requested information by November 4. However, defendant has not shown that the State’s inaction on his request would provide grounds for a motion to quash. CCrP Art. 532.
A bill of particulars serves to more specifically inform a defendant of the nature and cause of the charge against him when the indictment or information is insufficient. CCrP Art. 484. Comment (a) to that article states
The defendant is entitled to know what the state intends to prove; but the bill of particulars cannot be employed in a fishing expedition for a recital of the details of the state’s evidence ...
Defendant’s motion for a bill of particulars essentially is a request for discovery because it seeks information about the radar unit used by Trooper Givens, not about the nature and cause of the charge. The remedies for failure to comply with the order, under these circumstances, do not include dismissal. CCrP Art. 729.5. Further, defendant has not shown that he was prejudiced because he did not complain further about the State’s inaction on his re *714 quest after he moved unsuccessfully for dismissal on November 18. The minutes indicate that defendant, without objection, proceeded to trial on December 9 and on February 3. We find no merit in the trial court’s denying defendant’s motion for dismissal under these circumstances.
ASSIGNMENT NO. 2
Defendant complains that the trial court should not have granted the State’s oral motion for continuance on November 18 because the State was already in violation of the order to furnish the requested radar certification data. He contends that the continuance represents “just one of a series of oppressive and prejudicial actions toward a defendant seeking to properly defend himself and, coupled with the error [complained of in assignment 1], ... [requires] dismissal.”
The motion for continuance must ordinarily be made in writing and filed at least seven days before trial. CCrP Art. 707. Defendant, however, has not shown that his defense was prejudiced by the continuance complained of. Under these circumstances, the trial court’s action was not an abuse of discretion. See State v. Russell, 397 So.2d 1319 (La. 1981).
The minutes reflect that defense counsel contemporaneously objected to the continuance, but do not indicate whether the objection was directed to the form, or to the grounds, of the motion for continuance. The thrust of defendant’s complaint is that the State should not have been allowed more time to gather the materials he requested. We find no prejudice in this delay. As we have earlier stated, dismissal is not a remedy for the State’s failure to comply, within specified time limits, with an order to produce the requested materials. We find no error in the granting of the continuance.
ASSIGNMENT NO. 3
Defendant complains that Troopers Givens and Ladet should not have been allowed to testify about the speed of his vehicle because the State had not laid a proper foundation to establish the reliability of the speed indication on the radar unit.
The only transcript in the record is the new trial on February 3, 1986. Trooper Givens testified that the radar unit in question was assigned to him for use in his patrol cruiser. Trooper Ladet, who was more familiar with the patrol area, was assigned to work with Trooper Givens.
Trooper Givens testified that, before going on duty at 5:30 a.m. the day defendant was cited, he calibrated his radar unit “in accordance with the manufacturer’s specifications” using two or more tuning forks supplied with the unit. He said the unit was functioning properly. Defense counsel objected when the trooper was asked the speed of defendant’s vehicle and the objection was overruled.
On cross-examination, Trooper Givens explained the process of field calibration, which he said he performs from memory.
I put the radar on check. It has ... internal calibration. It shows up 188 on moving screen and 88 on the stationary screen. It has a[n] internal calibration of 60 on ... on radar on the moving screen and the stationary screen. You turn the radar switch on. Turn the radar to on position, strike the tuning fork. It has frequencies printed on the tuning fork. Those frequencies should correspond with the frequency ... with the numbers on the radar. You strike [the tuning fork] hold it in front of the antenna and it should be the same numbers printed on the screen as that on the tuning fork. I did that to both the front and rear antennas.
The record also indicates that each unit regularly undergoes additional, more detailed calibration than that performed by troopers in the field. Trooper Givens said there is “a person at the troop that is responsible solely for that.” On cross, he continued:
Q. Do you have anything ... in your possession concerning the calibration o[r] the correctness of this particular unit?
*715 A. Calibration?
Q. Yes, by the manufacturer or the service company or whoever keeps them up for the State Police?
A. No sir, I do not.
Q. Do you have anything with you that indicates the model number and the serial number on your unit?
A. No sir. I think I gave that information to you the last time I was here.
Q. You gave me a letter. Do you have anything other than that letter?
A. No sir, I do not.
' The letter referred to is printed on a Decatur Electronics letterhead and shows that a model number MV724 radar unit was certified for accuracy and compliance with Federal Communications Commission regulations on February 22, 1985. The letter is notarized and indicates the serial numbers of the unit and the antennae tested. The letter was not formally introduced at the new trial on February 3, 1986. The quoted testimony indicates that the letter was either offered in evidence or was given to defendant’s counsel at the first trial in December 1985.
Defendant contends that a proper foundation for admission of the speed evidence would at least require the State to elicit testimony about the arresting officer’s training and experience in operating the unit and to identify, through direct testimony or otherwise, any written calibration or certification reports with the particular unit used to measure the speed of defendant’s vehicle. He does not suggest that the scientific reliability of radar equipment must be established, but contends that the reliability of this particular unit was not established. It is proper to take judicial notice of the scientific, electronic, and physical principles employed in radar speed detection apparatus. State v. Spence, 418 So.2d 583 (La.1982).
In Spence, who was being tried for negligent homicide, the State offered evidence of the defendant’s speed as an element of proof of criminal negligence. The trooper, who clocked the defendant on radar, testified that he was qualified and certified by the FCC and by the equipment manufacturer to operate the units, that he was responsible for training other troopers in operation of the units, and that he calibrated his unit before each shift using the tuning fork method described by Trooper Givens. When the witness was asked about defendant’s speed, defense counsel objected that the State had not laid a proper foundation. The objection was overruled. In rejecting defendant’s argument that the State must establish by expert testimony the accuracy of the particular unit used, the court said
The accuracy of a particular radar unit can be established by showing that the operator tested the device in accordance with accepted procedures to determine that the unit was functioning properly and that the operator was qualified by training and experience to operate the unit. 418 So.2d at 588. (Emphasis added.)
Spence does not require any proof of calibration beyond the tuning fork check performed by Trooper Givens. The court referred to the tuning fork method as the “accepted method of testing to determine that the set is operating properly and measuring accurately.” 418 So.2d at 588. Thus, while the materials sought by defendant showing “certification of calibration,” if provided by the State and introduced by defendant, might have been probative of the unit’s reliability, these materials are not necessary prerequisites for admission of the radar’s indication of speed.
Further, the requirement announced in Spence that the witness be “qualified by training and experience” to operate the unit does not mean that every trooper who uses radar and testifies about speed measurements must be trained and certified by the FCC or the equipment manufacturer. The trooper that testified in Spence had training beyond that of his fellow troopers, whom he trained in the use of radar units. Nothing in Spence indicates that other troopers trained by the Spence trooper would be unqualified to testify about radar speed measurements.
*716 The State laid a sufficient foundation to admit the trooper's testimony about the indicated speed of defendant’s vehicle by establishing that Trooper Givens calibrated the unit “in accordance with the manufacturer’s specifications.” Further, both troopers were experienced in the operation and use of the unit. It may be inferred from Trooper Givens’ detailed explanation of the calibration procedure that he has been trained in the use, operation, and check of calibration of the device. We find no statute or rule requiring the radar device to undergo certification procedures that are required of devices that measure blood alcohol by means of breath. See LRS 32:663 and La. Register DPS Rule 1, Yol. 11, No. 3, March 20, 1985. The testimony regarding defendant’s speed was properly admitted.
ASSIGNMENTS NO. 4 & 5
In assignment 4, defendant complains that an inadequate foundation was established for testimony that his was the vehicle being driven at 67 miles per hour, because, the argument continues, neither trooper could satisfactorily explain how the radar could have distinguished his vehicle from the truck which he was passing when he was clocked. In assignment 5, he complains that because the evidence does not exclude the reasonable possibility that the speed of the other vehicle was clocked, there was insufficient evidence to convict. Defendant cites Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Even if we assume arguendo that the truck, and not the defendant’s overtaking vehicle, was clocked by the radar at 67 miles per hour, the evidence is legally sufficient to convict because, under those circumstances, defendant’s speed would logically and necessarily be greater than 67 miles per hour. Both troopers expressly testified that the radar reading was obtained while defendant was passing the truck.
For the foregoing reasons, appellant’s conviction and sentence are AFFIRMED.