514 So.2d 651 (1987)
STATE of Louisiana, Appellee,
v.
Wilbert STEVENSON, Appellant.
No. 18977-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
*653 Hunter, Scott, Blue, Johnson & Ross, by Daryl Blue, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Kathy R. McCoy, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, JASPER E. JONES, and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Wilbert Stevenson, was convicted of manslaughter by jury in Ouachita Parish. The defendant was sentenced to 21 years at hard labor. The defendant appeals the conviction and sentence. We affirm.
The defendant appeals his conviction and sentence, relying on the following six assignments of error:
Assignment of Error No. 1:
The trial court committed prejudicial error when it failed to order the Ouachita Parish District Attorney to provide defendant with Rudolph Donald's arrest and/or conviction records.
Assignment of Error No. 2: The court erred when it denied defendant's motion for post verdict judgment of acquittal, or in the alternative a new trial.
Assignment of Error No. 3:
The trier of fact erred in finding defendant guilty in that a rational trier of fact could not have found defendant guilty beyond a reasonable doubt based on the evidence presented.
Assignment of Error No. 4:
Honorable Judge Michael Ingram erred and abused his discretion in sentencing defendant to 21 years at hard labor.
Assignment of Error No. 5:
A sentence of 21 years at hard labor is harsh and excessive when viewed with the sentencing guidelines set forth by LSA-C.Cr.P. art. 894.1 and the facts of this case.
Assignment of Error No. 6:
The trial court erred when it failed to order the state to inform defendant of what actions he had allegedly taken toward the commission of the offense charged.

FACTS
The record reveals the following facts when viewed most favorably to the state:
On March 30, 1985, the defendant was walking along the sidewalk of the seven hundred block of DeSiard Street in Monroe, Louisiana. The defendant was approached by the victim, Rudolph Donald. Donald stepped on the defendant's foot. Hostile words were exchanged and Donald slapped the defendant in the face. A fight between the two men began which lasted approximately 45 minutes. Though the victim precipitated the fight the defendant was at all times in total control of the fight and struck the victim at will. However, during a lull in the fight the victim succeeded in arming himself with a large tree limb from the rear of a nearby alley. The limb was approximately two inches thick and several feet long. Donald struck the defendant across the chest with the limb which broke upon impact. The defendant grabbed the remaining portion of the limb held by Donald, and both men fell to the ground. The defendant succeeded in wresting the limb from Donald's grasp and for the remainder of the fight, as in that part of the fight before the victim armed himself with the limb, the defendant was in complete control of the fight and had no basis to believe he was in any danger from the disarmed victim. The defendant struck Donald two or *654 three times with the limb. At least two of the blows with the limb were imposed upon the head and neck of the victim and the last of these licks was struck while the victim was lying motionless upon the ground. The defendant then kicked Donald about the head and chest before leaving the scene to enter a nearby bar. The trauma upon the victim was inflicted with such force that three areas of his body were so seriously injured that the damage to any of the three areas could have caused his death. His skull was shattered and brain extensively damaged. His cervical spine was torn and seriously injured. His lungs and heart were injured to a great degree. Donald died as a result of the injuries inflicted during the fight.

Assignments of Error No. 1 and No. 6
Defendant contends the trial court erred when it failed to order the state to supply specific answers to defendant's bill of particulars. Defendant argues he was prejudiced in his defense because the state was not required to provide (1) the victim's arrest and conviction records, nor (2) information as to the actions allegedly taken by the defendant toward the commission of the offense.
After the state declined to answer the defendant's requests contained in the bill of particulars, defendant requested a hearing to require the state to respond. At the hearing, the trial court ruled the bill of particulars to be an improper discovery device for obtaining the victim's criminal record. The trial judge denied the defendant's second request because the state had adequately advised the defendant of his action which committed the crime when the state advised the charge was based upon LSA-R.S. 14:31(1), which defines manslaughter as a killing under facts that would have been first or second degree murder except for their commission having occurred while defendant was provoked sufficiently to deprive an average person of his self control and cool reflection.
The function of the bill of particulars is to inform the defendant more specifically of the nature of the charge against him. LSA-C.Cr.P. art. 484. The bill of particulars may not be used to obtain the state's evidence. State v. Huizar, 414 So.2d 741 (La.1982); State v. Creel, 490 So.2d 711 (La.App. 2d Cir.1986).
The granting or refusal of a bill of particulars is within the discretion of the trial court and its ruling will not be disturbed unless a clear abuse of that discretion is shown. State v. Burch, 365 So.2d 1263 (La.1978).
The defendant's request for the victim's criminal record is beyond the scope of the bill of particulars. The victim's criminal record is evidential in nature and could have been more appropriately sought under discovery. Further, the defendant has not shown he was prejudiced as the record reveals no subsequent attempts to gain the information were made after the hearing on the bill of particulars.
The defendant was adequately informed of the nature of the charge against him by the state's answer to another particular wherein the defendant was advised he was charged under 14:31(1)[1]. Any further information sought by the defendant concerning how the state had determined the defendant had committed the alleged offense would require the state to reveal evidence. Such details are not required to be supplied by the state. State v. Jenkins, 338 So.2d 276 (La.1976). We find no abuse of the trial court's discretion and these assignments are without merit.

Assignment of Errors No. 2 and No. 3
The defendant contends the trial court erred in denying his motion for post verdict *655 judgment of acquittal or, in the alternative, a new trial. Defendant maintains there was insufficient evidence to support the verdict in that the state failed to prove beyond a reasonable doubt the offense was not committed in self-defense.
In a homicide prosecution where the defendant claims self-defense, the state must prove beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Brown, 414 So.2d 726 (La. 1982); State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.1987), writ den., 508 So.2d 64, 65 (La.1987). The test to be applied in considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Ruff, supra; see also LSA-C.Cr.P. art. 821.
The defendant does not contend the victim died other than as a result of his actions. The defendant argues he was justified in his use of force upon the victim. In brief, defense counsel points to testimony indicating the victim was the initial aggressor and defendant made several efforts early on to extricate himself from the conflict.
LSA-R.S. 14:20 reads, in part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
Testimony at trial revealed the victim initiated the altercation by stepping upon the defendant's foot and slapping the defendant on the face with his hand. The defendant's own witness, Andrew Robinson, testified the defendant controlled the fight by "getting better than the smaller guy [the victim]" and eventually the defendant "got tired of beating him [the victim]." At that point, the defense witness testified the victim retrieved the stick. The evidence supports that the defendant could have been justified in believing he was in danger only after the victim armed himself with the stick. This justification was removed when the defendant immediately disarmed the victim.
The state's witness, Percy Manning, testified that after the defendant had disarmed the victim, he hit the victim with the stick, causing him to fall to the ground, then hit the victim again with the stick, and finally stomped him as the victim lay motionless on the ground. Manning's testimony was substantially corroborated by the testimony of Richard Earl Smart, who stated the defendant "whipped [the victim] twice with the stick and ... as he got off of [the victim] he stomped him." James Wesley, another state witness, also supported this version of the fight to some extent in that he stated the defendant "shoved [the victim] down, [and] when he shoved him down he started beating him with the stick." The testimony submitted by these witnesses indicates all blows the defendant inflicted upon the victim after he was disarmed and then while he lay prone on the ground were unnecessary and cannot be characterized as justifiable self-defense.
It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses and overturn the jury on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Jackson, 452 So.2d 1225 (La.App. 2d Cir.1984).
We conclude a rational trier of fact could have found the state proved beyond a reasonable doubt the homicide was not committed in self-defense.
These assignments have no merit.

Assignments of Error No. 4 and No. 5
By these assignments, defendant complains his sentence is excessive. Defendant contends the facts of the case do not support imposition of the maximum sentence for manslaughter and the trial judge *656 failed to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ den., 439 So.2d 1974 (1983); State v. Square, 433 So.2d 104 (La.1983).
While the trial judge need not articulate every aggravating and mitigating circumstance, the record must reflect that he adequately considered the guidelines of LSA-C.Cr.P. art. 894.1 in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ den., 438 So.2d 1112 (1983).
Maximum sentences are generally reserved for the most serious violation of the offense and the worst kind of offender. State v. Lanclos, 419 So.2d 475 (La.1982).
The record reveals Dr. Pyrrha Grodman the pathologist who performed the autopsy upon the victim, testified the victim received severe injuries to the spinal cord, the brain, and the chest. The autopsy revealed hemorrhage over the surface of the brain and broken bones in the bottom of the skull. The spinal cord was torn. The heart and lungs were extensively damaged evidenced by hemorrhage into the left lung and on the surface of the heart. Dr. Grodman stated the damage to the chest and head and neck could each have independently caused death.
Testimony indicating the defendant may have been trying to loosen the victim's grip on his leg while the victim lay on the ground does not avail the defendant. The considerable amount of force necessary to inflict such extensive injuries imposed by the defendant upon three areas of the victim's body while he was in control of the fight places him squarely in the worst category of offenders for the crime of manslaughter. Further, the intoxicated condition of the defendant at the time of the offense does not excuse the defendant's actions. Although testimony at trial indicated the defendant was inebriated, at no time was it established that this condition prevented the defendant from knowing the criminality of his actions.
We are further persuaded this sentence is not harsh in light of defendant's criminal history and status as a second felony offender. Defendant was charged and convicted of several incidences of simple battery and in 1975 was sentenced to ten years at hard labor for possession of heroin with intent to distribute. Defendant's repeated convictions of simple battery and most recently simple battery upon a police officer evidences a propensity towards violence against persons. Such an offender poses a threat to the safety of the public. In light of these facts and defendant's criminal history we conclude the maximum sentence of twenty-one years is well supported by the facts elicited from the record and we find no abuse of the trial court's discretion.
We also conclude the trial court adequately particularized the sentence to the defendant in compliance with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. The record reveals the trial judge ordered a presentence report before imposing sentence. At the sentencing hearing, the trial judge observed the defendant's status as a second felony offender resulting from a prior conviction for possession of heroin with intent to distribute. The trial judge noted the defendant's extensive criminal history, including simple battery convictions and several charges involving the possession of marijuana. As an additional aggravating circumstance, the court noted the testimony at trial which indicated the defendant could have retreated from the fight with the victim.
In mitigation, the court stated "it's obvious to the court that the jury concluded that the defendant overacted or overreacted in an attempt to repel the victim's advances."
We conclude the trial judge properly applied the sentencing guidelines of LSA-C. Cr.P. art. 894.1. This sentence upon this defendant does not represent a needless *657 imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). These assignments are without merit.
For the reasons expressed above, the sentence and conviction are affirmed.
AFFIRMED.
NORRIS, J., concurs in part and dissents in part.
NORRIS, Judge, concurring in part and dissenting in part.
I concur with the majority's conclusion that a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found that this homicide was not committed in self-defense.
I respectfully dissent, however, from the majority's conclusion that the maximum sentence of 21 years is not excessive. Maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type offender. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Jones, 398 So.2d 1049 (La.1981). In this case, the victim was the aggressor in both starting the fight and escalating the amount of force used. The evidence shows that the defendant withdrew from the fight on several occasions, but on each occasion the victim would grab him and start the fight over. In fact, the defendant had withdrawn from the fight and begun to leave the area when the victim secured the limb, caught up with the defendant, and hit him across the chest with it. It was at this point that the defendant disarmed the victim after a struggle over the limb, hit the victim several times with the limb, and kicked him after he was defenseless.
Although the defendant had a prior felony drug conviction and several misdemeanor convictions, many of which were traffic violations, this defendant is not the worst type offender and this case was certainly not the most serious manslaughter violation. The defendant acted under strong provocation; there were substantial grounds which, though failing to establish a defense, tend to excuse or justify his criminal conduct; and the victim induced or facilitated the commission of the crime. Therefore, I consider the maximum sentence of 21 years to be excessive under the circumstances present in this case. I would reverse the sentence and remand for resentencing to a term of imprisonment of not more than 12 years.
NOTES
[1] § 31. Manslaughter

Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed ...