552 So.2d 612 (1989)
STATE of Louisiana, Appellee,
v.
David Dennis BROWN, Appellant.
No. 20,803-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
*613 Laura J. Johnson, Winnfield, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Charles B. Bice, Dist. Atty., James E. Calhoun, Asst. Dist. Atty., Winnfield, for appellee.
Before MARVIN, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, David Dennis Brown, was charged by bill of information with one count of distribution of marijuana and one count of distribution of cocaine, violations of LSA-R.S. 40:969 and 40:964, respectively. Convicted by a jury on both counts in April 1988, he was sentenced to serve three years at hard labor on the distribution of marijuana offense and five years at hard labor for distribution of cocaine, such sentences to run concurrently. He now appeals his convictions. We affirm.

FACTS
On February 13, 1987 at approximately 4:37 p.m., Deputy Reginald Fields, a commissioned undercover officer working for the Winn Parish Sheriff's Office, was riding in a vehicle with an informant. They were attempting to make "some undercover buys" with money previously obtained from Deputy Gregory Davies or State Trooper Stanley Martin. Deputy Fields encountered the defendant driving a tan Cadillac on a street in Winnfield, and asked if he had any cocaine. Defendant responded that he did not, but offered to sell some "weed," a street term for marijuana. Deputy Fields then purchased, for $30, a bag of marijuana from the defendant, who stated he possibly would have some cocaine later.
On February 17, 1987, at about 4:30 p.m., Fields and the same informant again observed defendant on another street in Winnfield. After declining a request to again sell marijuana, defendant stated he had some "caine," meaning cocaine. Fields then proceeded to purchase half a gram of cocaine from defendant for $50. Laboratory analyses confirmed that the suspected drugs purchased were indeed marijuana and cocaine.
Although in his appeal defendant designated four assignments of error, one was neither briefed nor argued, and is therefore considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. *614 Williams, 338 So.2d 672 (La.1976); State v. Domingue, 298 So.2d 723 (La.1974).

ASSIGNMENT OF ERROR NO. 1
In the first of the remaining three assignments of error, defendant contends that the trial court erred in allowing Deputy Davies to be exempted, on the state's request, from the witness sequestration rule provided by LSA-C.Cr.P. Art. 764. The assignment further alleges that Davies at that time served as a judicial administrator under the direct supervision of the trial judge in this case.
Concerning the exclusion and conduct of witnesses, LSA-C.Cr.P. Art. 764 at the time of trial read as follows:
A. Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
B. This Article shall authorize the exclusion of all witnesses except the defendant and one officer or employee of the state who is designated as its representative for the entire trial by the district attorney. This officer or employee of the state shall refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel.
"The right to have witnesses sequestered is an important right which implements the use of cross-examination as a truth-testing device." In Re Giangrosso, 395 So.2d 709 at 712 (La.1981). Its purpose is to prevent witnesses from being influenced by prior testimony and to strengthen the role of cross-examination in developing facts. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Warren, 437 So.2d 836 (La.1983); State v. Bolden, 501 So.2d 942 (La.App. 2d Cir.1987). Application of Art. 764 is mandatory and the trial court shall order that the witnesses be sequestered upon motion of either party. State v. Johnson, supra.
Prior to its 1986 amendment, Article 764 consisted solely of the language now contained in Subsection A. The article thus contained no specific provision authorizing exemption of a representative of the state from the rule of sequestration. As a result, Louisiana courts periodically struggled with the issue of whether or not such exclusion from sequestration could be justified.
The Louisiana Supreme Court indicated a trial judge could modify sequestration only in the "interest of justice," State v. Johnson, supra, and that the party seeking modification faced a burden to show that such an interest would be served, In Re Giangrosso, supra.
In State v. Narcisse, 426 So.2d 118 (La. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983), reh'g denied, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983), permitting a police officer to remain in the courtroom throughout the course of the trial and then to testify was found to be a violation of the sequestration rule but, nonetheless, harmless error. It was later explained:
Where the purpose of sequestration is not thwarted by the presence of witnesses... and where defendant cannot be shown to have been materially prejudiced thereby, the refusal of the trial court to order sequestration may be considered harmless error.
State v. Johnson, supra, at 1096.
The facts of State v. Arnold, 466 So.2d 520 (La.App. 3d Cir.1985), writ denied, 470 So.2d 124 (La.1985) were to a degree similar to those of the present case. There, the chief investigating officer was excluded from the rule upon request of, and so that he could assist, the district attorney. The appellate court observed that the exemption was for the convenience of the state, not primarily for the interest of justice. Although it was not possible to determine if the officer's testimony was in fact influenced by that of earlier witnesses, there existed no evidence that the defendant was materially prejudiced by such possible influence, *615 and thus the failure to sequester constituted harmless error.
In State v. Thomas, 470 So.2d 413 (La. App. 3d Cir.1985), the trial court permitted a police officer to remain in the courtroom to serve as the state designated representative and to assist the state with presentation of its case. Although finding that good cause existed to exempt the officer from the sequestration rule, the Third Circuit concluded that determination did not mark the end of its analysis. Instead, further inquiry needed to be made as to whether the prejudice to the defendant by the exemption outweighed the "good cause." After proceeding to examine that issue, the court pronounced that the defendant was not prejudiced by the exclusion of the officer from the rule.
Of course, at the time of the present trial, LSA-C.Cr.P. Art. 764 expressly provided for the exclusion of a representative of the state from the sequestration order. Although the article itself thus resolved the question of "interest of justice" or "good cause," we cite the above jurisprudence for the proposition that the inquiry does not end there. Because of the inherent nature of the situation, while the provisions of Art. 764 did not specifically so state, it nevertheless follows that further examination should occur in order to protect against the potential for prejudice.[1]
The record discloses that the district attorney requested that Deputy Davies be exempted from the rule and allowed to remain in the courtroom "on behalf of the state." This indicates an intention to designate the officer as the state's representative pursuant to LSA-C.Cr.P. Art. 764(B).
Deputy Davies had only limited involvement in the transactions between defendant and the undercover officer. Additionally, Deputy Davies was not the investigating officer. His role was principally administrative and his testimony primarily concerned the procedures involved. He delivered funds with which the officer purchased the controlled dangerous substances and then met with him after the purchases to obtain the contraband. The testimony of Deputy Davies did not directly involve that of other witnesses. Consequently, his presence in the courtroom fails to authorize a conclusion that his testimony in any way was influenced. Nor can we find that his remaining in the courtroom materially prejudiced the defendant.
Additionally, although defendant alleges that Deputy Davies was serving under the supervision of the trial judge at the time of his testimony, there is no evidence in the record which supports this assertion. Instead, the evidence indicates that Deputy Davies was employed by the Winn Parish Sheriff's Office. Even if it is assumed that he was in some manner under the direct supervision of the trial judge, there would arise no presumption that the presiding judge would expect one of his officials to testify to anything other than the truth as known by that witness.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant asserts in his second assignment of error that the "trial court erred in allowing testimony that officers believed they had seen defendant's car in front of a pharmacy to discredit defendant's witnesses who stated the car was not drivable at the time of the second alleged incident." Our review of the record indicates, however, that defendant failed to contemporaneously object to the admission of such testimony. He therefore may not so complain on appeal. LSA-C.Cr.P. Art.

*616 841; State v. McDonald, 414 So.2d 735 (La.1982).
Of course, after evidence is presented, the resolution of factual contradictions and issues of credibility are left to the trier of fact, the jury, alone. State v. Zeno, 469 So.2d 337 (La.App. 2d Cir.1985), writ denied, 474 So.2d 1303 (La.1985). It is not the function of a reviewing court to overturn such evaluations and determinations. State v. Stevenson, 514 So.2d 651 (La.App. 2d Cir.1987), writ denied, 519 So.2d 141 (La.1988).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
The third assignment of error is that the trial court erred in accepting the verdict of guilty which was "clearly against the weight of the evidence of the alibi eyewitnesses' accounts of the whereabouts of the defendant on the afternoon of the first alleged incident." Resolution of this contention requires a sufficiency of the evidence determination.
In reviewing the sufficiency of evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It must be determined if the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact of all the elements of the crime beyond a reasonable doubt.
Hence, any conflict in the direct evidence must be resolved by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Captville, 448 So.2d 676 (La.1984).
In the instant case, a review of the evidence indicates that the officer on two separate occasions made undercover buys from an individual that he later identified as the defendant. Both times, that individual drove a tan Cadillac, an automobile that Deputy Fields had seen defendant occupying on many occasions, including times both before and after the two drug buys. Additionally, during the second transaction Deputy Fields wrote down the license number from the automobile. Defendant admitted that number to be on the license plate of his car.
Deputy Davies, who furnished the undercover officer with "buy money," testified how the purchased substances were given to him by Deputy Fields and then sent to the crime lab for analysis. Testimony of the forensic chemist established those substances were in fact marijuana and cocaine. Deputy Davies further stated that sometime after February 13 he saw defendant drive a tan Cadillac to the front of a local pharmacy and park it. The state did not succeed in subpoening the informant for the trial.
During February, Trooper Martin learned of defendant's involvement in a drug transaction. A week or so later, he witnessed defendant operating and exiting from a tannish brown Cadillac in front of the pharmacy mentioned by Deputy Davies.
Contradicting the testimony of the police officers were alibi witnesses. Defendant's wife testified she and her husband attended a party in Monroe on the day of the alleged marijuana sale, and did not return to Winnfield until about 2:00 the following morning. She testified that they drove a borrowed Chevrolet Spectra on the trip since the tan Cadillac was inoperable. She did not, however, recall what she and her husband did on the day of the alleged cocaine transaction. Coretta Alexander, a future sister-in-law of the Browns, asserted that the defendant and his wife attended a party at her residence in Monroe on the night of February 13.
In addition to corroborating the testimony of his wife and sister-in-law, defendant asserted that prior to trial he sold a tan Cadillac which had been broken down throughout the month of February 1987. He also stated that he had never seen marijuana or cocaine other than on television.
*617 He was unemployed during February 1987.
Carla Mitchell, another of defendant's sisters-in-law, testified that the Browns borrowed and retained her Spectra from late January to May. Also, she stated the tan Cadillac was inoperable, parked and covered in dust at the time. Patricia Ann Atkins testified that she loaned her car to the Browns on January 31, 1987, so they could pick up Ms. Mitchell's car, and that during that time the tan Cadillac was not in running condition.
The testimony, when considered in its entirety, demonstrates two sets of witnesses in direct conflict concerning the marijuana sale on February 13. The jury simply chose to believe the testimony of the police officers. As stated earlier, questions of credibility and resolution of conflicting testimony are within the sound discretion of the trier of fact. State v. Bonnett, 524 So.2d 932 (La.1988), writ denied, 532 So.2d 148 (La.1988); State v. Woods, 444 So.2d 1332 (La.App. 2d Cir.1984).
Certainly, when viewed in the light most favorable to the state, the testimony of Officer Fields shows defendant to have sold marijuana and cocaine on two separate occasions. Moreover, all three officers contradicted defendant's testimony that his car was inoperable at the time of the incidents. Indeed, it would not be unrealistic for a jury to sense bias in the testimony of the direct alibi witnesses, who were all related by blood or marriage to defendant. Moreover, there is little in the way of alibi testimony regarding the day of the alleged cocaine sale. Obviously, the jury chose to discredit the testimony of defendant and his wife that they carried on routine activities on that date. That testimony, of course, was intended to rebut Officer Field's account of the cocaine sale.
Thus, under the appropriate appellate standards, the evidence supports the jury finding that beyond a reasonable doubt defendant distributed controlled dangerous substances on February 13 and 17, 1987.

CONCLUSION
For the reasons indicated, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] See recently enacted Code of Evidence Article 615, which provides that an officer may be excluded from sequestration without a showing that he is essential to the presentation of the state's case. The comments thereto explain, however, that the exemption may result in manifest unfairness to a defendant when the law enforcement officer designated as the state's representative is expected also to testify as a fact witness. The comment notes that in such a situation the court should take appropriate measures to minimize the possibility of prejudice. Thus, the most recent legislation indicates that a balancing of the defendant's rights with the allowance of the state to exclude a representative from the rule should be conducted when possible prejudice appears.