821 So.2d 556 (2002)
STATE of Louisiana, Appellee
v.
Gerald WITHERS, Appellant.
No. 36,001-KA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*557 Todd Newman, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones District Attorney, Geary Aycock, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
BROWN, J.
The state charged defendant, Gerald Withers, with D.W.I.-third offense, a violation of La.R.S. 14:98(D), punishable at the time of the offense, July 17, 1999, by imprisonment at hard labor for not less than one year nor more than five years, at least six months of which "shall be" without benefit, a mandatory fine of $2,000 and with a requirement that the vehicle being driven by the offender at the time of the offense shall be seized, impounded and sold in the same manner and under the same conditions as executions of writ of seizure and sale as provided in the Code of Civil Procedure articles 2721-2725.[1] Defendant waived trial by jury. The case was tried before the court and defendant was found guilty as charged. The trial court imposed a sentence of 18 months at hard labor, with six months thereof to be served without benefit, as well as a $2,000 fine.
On appeal, defendant argues that the evidence was insufficient to support his conviction beyond a reasonable doubt. For the reasons set forth below, we affirm defendant's conviction. We note, however, that the trial court failed to impose the mandatory order that the vehicle being driven by defendant at the time of the offense be seized, impounded and sold at auction. We remand this case to the trial court to determine whether any exemptions or constitutional prohibitions exist, and, if not, to comply with this requirement of La.R.S. 14:98(D).

Discussion
Defendant concedes valid convictions on the two predicate offenses and that he was the driver of the vehicle involved in the instant offense. Defendant, however, argues that the evidence was insufficient to support a guilty verdict.
Due process requires that no person be made to suffer a criminal conviction except upon sufficient proof which is defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of guilt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The critical inquiry in reviewing the sufficiency of the evidence to support a criminal conviction is a determination of whether the evidence, viewed in the light most favorable to the prosecution, could reasonably support a finding of guilty beyond a reasonable doubt. Jackson v. Virginia, supra.
This court's authority to review questions of fact in criminal cases is limited to the sufficiency of evidence test under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
*558 To convict an accused of driving while intoxicated, the state need only prove that defendant was operating a vehicle and that he was under the influence of alcohol or drugs. State v. McDonald, 33,013 (La.App.2d Cir.03/01/00), 754 So.2d 382; State v. Courtney, 30,629 (La.App.2d Cir.05/13/98), 714 So.2d 176; State v. Edwards, 591 So.2d 748 (La.App. 1st Cir. 1991), writ denied, 94-0452 (La.06/21/96), 675 So.2d 1072.
Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. McDonald, supra; State v. Courtney, supra; State v. Edwards, supra; State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La.1989). It is not necessary that a conviction for DWI be based upon a blood or breath alcohol test and the observations of an arresting officer may be sufficient to establish a defendant's guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. McDonald, supra; State v. Courtney, supra.
Ronald Goldston testified that he was involved in a traffic accident on I-20 on July 16, 1999. When the traffic slowed to 45 m.p.h., apparently at a construction zone, a Ford Bronco ran into the back of Goldston's vehicle, then "took off." Goldston followed the Bronco and notified the police on his cell phone.[2] A state trooper stopped the Bronco several miles from the scene of the accident. Defendant was driving the truck. While Goldston was in pursuit, he observed the vehicle being operated recklessly, at speeds up to 75 m.p.h. in a 45 m.p.h. zone. He also saw defendant run a stop sign.
On cross-examination, Goldston stated that defendant hit his vehicle square on the rear. When Goldston pulled to the right to stop, defendant swerved to the left and passed him. There were no other vehicles in front of Goldston at that time. The damage to Goldston's truck was approximately $1,200 to $1,300.
Louisiana State Trooper Ross Cannon testified that he was at the desk at Troop F when a cell phone call came in about the accident and pursuit. Looking out the window, Trooper Cannon saw the Bronco. The trooper got in his police vehicle to pursue the Bronco. After closing to approximately 150-200 yards, Tpr. Cannon observed defendant's vehicle weaving within its lane and crossing over the center line twice. The vehicle failed to stop at the intersection of Old Swartz School Road[3] and Stubbs Vinson Road.
When defendant got out of the Bronco, he was talking in a slurred voice about his brakes not working. The trooper observed defendant to be "just kind of staggering." When Tpr. Cannon mentioned the stop sign violation, defendant again said something about his brakes. His voice was slurred and he "seemed very incoherent because he kept looking in other directions like he was lost."
Trooper Cannon smelled an alcoholic beverage on defendant's breath. Defendant said that he had "bumped" a vehicle on I-20, but there was no damage so he kept on driving. Tpr. Cannon identified defendant as the driver of the Bronco. Defendant told the trooper that he had consumed four or five beers several hours earlier. An inventory of defendant's vehicle *559 revealed a few unopened beer cans and "several empty beer cans." The vehicle smelled of alcoholic beverages. Defendant refused to participate in field sobriety tests, pursuant to "advice from his attorney." Defendant seemed incoherent and was swaying back and forth. At one point, defendant propped himself up on the front of the police car. Trooper Cannon "began to feel that he [defendant] was probably intoxicated."
Trooper Cannon arrested defendant at the scene and took him to Troop F for a breath test. Tpr. Cannon informed defendant of his rights and defendant refused to take the test.[4] Defendant stated that he had no physical defects; he did not have diabetes; he had no problems which would affect his normal functions or motor skills; he had not recently been to a doctor or dentist. Trooper Cannon concluded that defendant "was under the influence of alcoholic beverages and he was intoxicated." Tpr. Cannon testified that he had made 40-50 D.W.I. arrests at that point in his career and had no doubt that defendant was under the influence. On cross-examination, Trooper Cannon stated that he had seen some crutches in defendant's vehicle.
Defendant called Dr. Sidney Bailey out of order to accommodate the physician's schedule. Dr. Bailey, who was accepted as an expert in orthopedic surgery, identified an x-ray dated February 23, 1999, of defendant's fractured lower leg. Dr. Bailey had operated on defendant on that date for multiple breaks in his leg. Such an operation normally requires six to eight months for healing and rehabilitation. Defendant had complained of a new injury to the leg in April 1999, about seven weeks before defendant's arrest for D.W.I. Dr. Bailey stated that defendant "apparently" decided to return to work against medical advice, which could have caused him to limp or not be able to walk properly in July 1999. On cross-examination, Dr. Bailey stated that he had not seen defendant in July 1999 and had no actual knowledge of how he would have been walking at that time.
The state recalled Trooper Cannon, who testified that during the traffic stop, defendant did not complain about an injury to either of his legs. He likewise did not ask to use the crutch that was in the Bronco, nor did he relate that he was injured in any way.
State Trooper Christopher Towell testified that he was Trooper Cannon's backup at the traffic stop. When Tpr. Towell arrived at the scene, defendant was swaying as he stood and then leaned on the police car. Defendant stated that he had consumed four or five beers and smelled of alcohol. Defendant's speech was slurred and he declined to submit to field sobriety tests. Tpr. Towell believed that defendant was under the influence of alcohol. Tpr. Towell was unable to remember whether there were any open beer cans in defendant's Bronco, though he did observe some unopened cans. The trooper was unable to remember whether defendant claimed that he was tired from working offshore and that he had been driving a long time.
Ouachita Parish Sheriff's Lieutenant Jim Gregory, a 26-year veteran of law enforcement, testified that defendant's known fingerprints taken during the course of trial matched the prints of the defendant convicted in the two previous D.W.I. cases. The state at that point rested.
*560 Defendant took the stand and testified that he'd been working offshore and had left Venice, Louisiana, after 8:00 a.m. on July 16, 1999. He'd been working 120 hours per week for three weeks. Defendant said that he had drunk four or five beers while in Venice waiting for a fellow worker, Brian Knowlton, who was going to ride with him. Brian drove to New Orleans, while defendant slept; that drive took about two hours. They then went to Jackson, Mississippi, with Brian still driving, arriving there around 3:00 p.m. After dropping Brian off, defendant proceeded west on I-20 towards his home in Bastrop.
According to defendant, when he approached the vehicle driven by Mr. Goldston, defendant's brakes failed. Defendant said that he ran into the right rear bumper of Goldston's vehicle, but because he saw no damage, he kept going. The passenger in the Goldston vehicle made some gesture, but no one made any attempt to speak to defendant. Traffic was very heavy at that point. Defendant stated that he had not had any brake problems prior to that day.
Defendant said that he left the scene of the accident because he was exhausted. He was familiar with the Swartz area and had been there over 100 times. He stopped at a red light and his brakes were "spongy." Nobody was behind him.
Defendant claimed that he stopped at the red light at Highway 80 and turned right onto 594, but that his brakes failed again and he went through the stop sign at Stubbs/Richie Road. He agreed that this was the stop sign that Tpr. Cannon had testified about. Defendant claimed that he was driving in that area to visit his brother's fiancee, Shawna Bass. However, he remembered that his brother and Shawna were in Crossett, Arkansas, for a rodeo so he did not stop.
Defendant stated that he pulled over immediately when he saw the trooper's lights behind him. He thought that he was pulled over for running through the four-way stop sign. Defendant got out of his Bronco and was walking back toward the officer when the trooper got out of his car. Defendant told the officer that there was something wrong with his brakes. Defendant denied that he was staggering. According to defendant, he always walks with a limp. He claims that he told the officer that he was limping because of a broken leg and that he had consumed the beers earlier that day while he was in Venice.
On cross-examination, defendant admitted convictions for D.W.I. in 1996 and 1997. He also acknowledged that there was a "good possibility" that he didn't mention his bad leg to Tpr. Cannon. Defendant stated that he was able to perform his job as a crane operator offshore from April through July 1999 even though he hadn't been released to return to work. According to defendant, he went back to work because he had bills to pay.
Defendant stated that the Bronco he was driving at that time had a standard transmission. He denied seeing Goldston following behind him and contradicted Goldston's testimony that he (defendant) was exceeding the posted speed limit. According to defendant, if his speech was slurred, it was because he was nervous.
Hubert Copes, who operates a towing business, testified that he towed defendant's Bronco to his lot on the date of defendant's arrest. Copes noticed that there was brake fluid leaking from the front of the vehicle and refused to let defendant's fiancee drive the Bronco off the lot.
Rodney Coleman testified that he picked up the Bronco for defendant because he had a trailer to haul the vehicle from the *561 towing yard. Coleman observed that the Bronco had a broken brake line and once he got the vehicle home, he replaced the broken line and added some brake fluid. Robert Sikes, an auto mechanic, testified that a broken front brake line would cause a loss of 65% of braking capacity and that anything left would be spongy or limited. Sikes noted that the loss of braking capacity could be consistent with defendant's testimony about losing the brakes, then regaining some braking capacity.
Dr. David Roane, a professor of pharmacology at the University of Louisiana at Monroe, was accepted as an expert in pharmacology and toxicology. He expressed his opinion that, assuming defendant's claimed weight at the time of the incident, and assuming his assertion that he drank four or five beers some nine and one-half hours prior to being stopped by the trooper, his blood alcohol content would have been below .10 at the time of the traffic stop.
On cross-examination, Dr. Roane agreed that his opinion was predicated on having received correct information in the hypothetical question. He also agreed that alcohol consumption can cause one to be confused, have slurred speech and stagger.
Defendant then called Tpr. Cannon back to the stand. Defense counsel asked numerous questions about photographs of the area of the pursuit. The pictures weren't accurate depictions of the area at that time, however, inasmuch as they had been taken just before trial and showed the road to have been repaved and missing the center yellow line. The balance of the questioning was leading, argumentative and repetitious of the cross-examination which had taken place during the state's case-in-chief. Tpr. Cannon testified that when he observed the vehicles involved in the collision, he did not see any defects other than a dent on Goldston's bumper.
Shawna Bass, defendant's brother's girlfriend, testified about the pictures of the streets in the area where the pursuit occurred. She also stated that defendant had lost a lot of weight since that time. Lori Sheppard, defendant's fiancee, also testified that defendant had lost weight since this incident. She produced a receipt for the purchase of items needed to repair the brakes on the Bronco and verified that defendant could have been headed to her house which was on the route he took during the pursuit.
Michael Adams, Assistant Director of Ouachita Parish Public Works, testified about the roads in the area of the chase. He knew that the road in question had been center striped but that it had been resurfaced since this incident. Adams also helped defuse the effort defense counsel had been making to discredit Tpr. Cannon's use of street names by pointing out that Old Swartz School Road was also known as Stubbs Richie Road. At that point, the defense rested.
The trial court found Ronald Goldston to be "very credible" and accepted his testimony. The court found Tpr. Cannon to be "very credible." The officer smelled alcohol, observed defendant staggering and found his speech to be slurred and incoherent. This testimony was corroborated by Tpr. Towell. The court concluded that there was no evidence that defendant walked with a limp, just testimony that it was "possible." Defendant worked offshore, which went against his claim of physical disability. The empty beer cans in the Bronco were corroboration that he had been drinking. That defendant "had enough sense about him to refuse the field sobriety tests" was significant to the court. The court likewise believed what Tpr. Cannon stated about defendant's driving over *562 the center line twice. According to the court, defendant's testimony "as a whole was completely incredible" and the "entire story was contrived line by line." The court also noted that defendant admitted to his two prior D.W.I. convictions.[5]
This case is simply one of credibility and weight of the evidence. A reviewing court neither makes credibility decisions nor weighs the evidence except to insure due process under the Jackson v. Virginia standard. Under Jackson, we must view the evidence in the light most favorable to support the guilty verdict under a reasonable doubt standard. This evidence, viewed in the light most favorable to the prosecution, proves the elements of D.W.I. third offense beyond a reasonable doubt. Therefore, we find no merit to defendant's assignment of error.
On the other hand, as noted above, the record indicates that in sentencing defendant, the trial court failed to impose the mandatory order to seize, impound and sell at auction the vehicle being driven by defendant. Accordingly, defendant's sentence may be illegally lenient. Notwithstanding the state's failure to seek appellate or supervisory relief in accordance with La.R.S. 15:301.1(B), we will remand for resentencing as it relates to defendant's vehicle under the authority of the recent supreme court pronouncement in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. See also State v. Phillips, 35,554 (La.App.2d Cir.01/23/02), 806 So.2d 964.

Conclusion
Having found the evidence to be sufficient to prove beyond a reasonable doubt that defendant operated a motor vehicle while intoxicated, we affirm defendant's conviction, as well as the sentence imposed, except to remand the matter to the trial court to determine whether the seizure, impoundment and sale of the vehicle owned and driven by defendant when he was arrested is required by law.
NOTES
[1] There are exemptions to the seizure/sale requirement, i.e., when the vehicle was stolen or the driver was not the owner or a lienholder's payment of towing and storage fees.
[2] Another call reporting the incident was placed by a woman who witnessed the accident.
[3] This road is also referred to as the Stubbs Richie Road.
[4] Refusal to submit to this test may be considered as evidence of intoxication. The weight of the evidence is left to the trier of fact. La.R.S. 32:666(A)(3); State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969).
[5] Because no one at the scene saw any brake fluid leaking, the trial court expressed "some strong suspicions" that someone on defendant's behalf tampered with the brake line after the vehicle left the scene.