855 So.2d 946 (2003)
STATE of Louisiana, Appellee,
v.
John Curtis BELL, Appellant.
No. 37,675-KA.
Court of Appeals of Louisiana, Second Circuit.
September 26, 2003.
Sam Henry, IV, for Appellant.
Robert W. Levy, District Attorney, Laurie L. Whitten, Assistant District Attorney, for Appellee.
Before BROWN, PEATROSS, and MOORE, JJ.
BROWN, C.J.
Defendant, John Curtis Bell, was charged with DWI (third offense) following a traffic stop of the vehicle he was allegedly driving on November 25, 1999. At the time of his arrest, La.R.S. 14:98 provided that the penalty for DWI (third offense) was imprisonment for not less than one year nor more than five years, a mandatory fine of $2,000 and a requirement that at least six months of the sentence be served *947 without benefit. A jury found defendant guilty as charged.[1]
On April 25, 2002, the trial court imposed the mandatory fine and sentenced defendant to three years at hard labor in accordance with La.R.S. 14:98 as it read at the time of the offense. The court, however, suspended the hard labor sentence on the condition that defendant serve nine months in the parish jail, six months of which were to be served without benefit. Defendant filed a motion for reconsideration, urging that his sentence was illegal in that it should have been imposed under La.R.S. 14:98 as amended (effective August 15, 2001) rather than as it read at the time of his arrest. The motion for reconsideration was denied by the trial court. Defendant perfected the instant appeal.

Discussion

Sufficiency
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
To convict an accused of driving while intoxicated, the state need only prove that the defendant was operating a vehicle and that he was under the influence of alcohol or drugs. La. R.S. 14:98; State v. Withers, 36,001 (La.App.2d Cir.06/12/02), 821 So.2d 556; State v. Holley, 32,156 (La. App.2d Cir.08/18/99), 742 So.2d 636; State v. Iles, 96-256 (La.App. 3d Cir.11/06/96), 684 So.2d 38.
As noted above, defendant admitted his intoxication, so the only sufficiency issue before this court is whether a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, supra, in the light most favorable to the state, could reasonably conclude that the prosecutor proved beyond a reasonable doubt that defendant was the driver/operator of the vehicle.

Summary of Trial Testimony
Lincoln Parish Sheriff's Deputy Stephen Williams testified that on November 25, 1999, he was on routine patrol in the eastern part of the parish. As Dy. Williams entered a curve on Beacon Light Road, a gray sports utility vehicle swerved toward the officer's lane, forcing him onto the shoulder of the road to avoid a collision. Dy. Williams turned his patrol car around and began pursuit. He lost sight of the SUV momentarily when it went over a hill, but he got to within 200 feet of the vehicle as it slowed to turn into the driveway of the Leisure Living Trailer Park.
As the deputy pulled into the mobile home park behind the SUV, two men were getting out of the vehicle walking towards one of the trailers. The area was lit and the deputy could see the driver, who was *948 at the left front of the SUV, and the passenger, who was at the right front of the vehicle. The two men continued toward the mobile home. Dy. Williams, not knowing the name of either man, asked the driver to step back from the porch they had both reached. Defendant, who had a beer in his hand, stumbled while getting off the porch and dropped his beer into the flower bed.
When asked to produce his driver's license, defendant told the deputy that he didn't have one and turned to go back to the trailer. Dy. Williams stated that he had to physically restrain defendant to get him to talk to him. Defendant, who was very belligerent, told the deputy to "go f yourself." Defendant smelled strongly of beer, was unruly and uncooperative and slurred his speech. Clearly defendant was under the influence. Defendant refused field sobriety tests and initially denied driving the Blazer. However, after being taken to the detention center, defendant admitted that he had been driving and that he was intoxicated.
On cross-examination, Dy. Williams conceded that his arrest report did not contain defendant's admission that he had been the driver. Dy. Williams testified that he watched the Blazer pull into the driveway and had seen defendant getting out of the vehicle from the driver's side. Defendant admitted to the deputy that the SUV was his.
Jason Carter testified that he was with defendant on the night of November 24, 1999 (and into the morning hours of November 25th). Defendant picked Carter up earlier that evening and drove his Chevy Blazer to a bar in Arcadia where they met up with some friends. They drank for four or five hours until midnight when the bar closed. Carter claimed that he drove the Blazer from the bar and was driving the SUV when they met the patrol car on the highway. According to Carter, the deputy arrived so late behind the Blazer that after Carter drove it into the trailer park driveway, he was sitting on the porch swing and defendant was standing at the trailer door with his keys in hand when the deputy pulled up.
On cross-examination, Carter admitted that he told Deputy Williams that defendant had been driving when they went to the mobile home, but he claimed that this version wasn't accurate. Instead, what he meant was that defendant had driven them to the bar five or six hours earlier. Carter admitted that he had told ADA Strider "yesterday" that defendant had been driving, but that he only said that because "they were telling me they were gonna arrest me" and charge him with DWI. Carter also conceded that at the time of defendant's arrest, he hadn't told the police he was driving. According to Carter, he didn't know at the time what they were charging defendant with.
Defendant testified that he and Jason Carter had met friends at the bar in Arcadia on the night before Thanksgiving. He drank beer from 7:30 or 8:00 until just before midnight. Jason was driving defendant's Blazer when they left the bar; defendant was "fairly drunk" at the time and didn't want to drive because he had two prior DWI convictions.
Defendant related that he was at the porch door trying to open it when the deputy pulled into the driveway. Defendant did not hear Dy. Williams ask to speak with the driver of the SUV. Instead, he walked over to the deputy to find out what the problem was. He admitted to getting loud with the officer because of frustration over the fact that he finally let someone else drive and he was still going to be the one arrested. According to defendant, he "can't win for losing." Defendant *949 also denied admitting at the detention center that he had been driving that night.
Deputy Williams testified on rebuttal that there was no way that the two men could have gotten onto the porch of the trailer and been sitting down before he pulled up in the driveway. He was adamant that they were walking toward the porch when he called out that he needed to speak to the driver. Dy. Williams reiterated that defendant admitted, at the detention center, that he had been driving the vehicle just before the traffic stop.
The evidence, viewed in the light most favorable to the state, consists of Deputy Williams' observation of defendant getting out of the driver's side of the Blazer, defendant's admission to the officer that he was the driver and Carter's inability to keep the story straight. Defendant admitted that he had two prior DWI convictions and he conceded that he was very drunk at the time of the incident. The jury was in the best position to determine the credibility of the witnesses. Looking at the testimony in accordance with the dictates of Jackson v. Virginia, supra, the jury could have found the essential elements of the charged offense proven beyond a reasonable doubt. This assignment of error lacks merit.

Testimony of ADA Strider
Defendant's second assignment of error is that the trial court erred in allowing assistant district attorney Cliff Strider to both act as an advocate for the state and testify on behalf of the prosecution. Defendant did not make a contemporaneous objection to Strider's testimony and has not cited any authority in support of this assignment of error.[2]
The jurisprudence holds that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Bosley, supra; State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Brown, 552 So.2d 612 (La.App. 2d Cir.1989), writ denied, 558 So.2d 581 (La. 1990). This assignment of error is not properly before the court and is without merit.

Error in Sentencing
Defendant argues that the trial court should have imposed sentence in accordance with the reduced range provided by the legislature via an amendment to La. R.S. 14:98 which was enacted after defendant committed the instant offense. We agree.
In accordance with the ruling of the supreme court in State v. Mayeux, 01-3195 (La.06/21/02), 820 So.2d 526, we vacate defendant's sentence and remand the matter for resentencing. Although defendant committed the instant offense prior to the enactment of 2001 La. Acts 1163, the act became effective on August 15, 2001, prior to the imposition of sentence. Therefore, under State v. Mayeux, supra, the amended sentencing provisions are to be applied in this case. State v. Self, 36,887 (La. App.2d Cir.04/09/03), 842 So.2d 1240; State v. Eppinette, 36,825 (La.App.2d Cir.02/11/03), 838 So.2d 189; State v. Nelson, 36,266 (La.App.2d Cir.08/14/02), 823 So.2d 1112.

*950 Conclusion

For the reasons set forth above, defendant's conviction is affirmed. His sentence is hereby vacated and the matter is remanded to the trial court for resentencing under La. R.S. 14:98(D) as amended by the legislature in 2001.
NOTES
[1] Late on the night of November 25, 1999, defendant and Jason Carter were in a vehicle owned by defendant, driving from a bar in Arcadia to defendant's home in Choudrant. Lincoln Parish Deputy Stephen Williams stopped the car for a traffic violation, improper lane usage, and subsequently arrested defendant for driving under suspension and DWI. At trial, defendant admitted that he had two prior DWI convictions and that he was legally intoxicated at the time of his arrest. The only issue was whether defendant had been driving the car the night of his arrest.
[2] Strider testified to rebut Carter's claim that he was threatened on the day before trial with arrest for perjury and DWI when he asserted that he had been driving the Blazer on November 25, 1999, and to rebut Carter's contention that he did not say that defendant was driving the SUV just prior to the stop. Strider related the conversation he had with Carter, including Carter's admission that he was lying when he said that it was he who had been driving the Blazer. Strider vehemently denied threatening Carter.