469 So.2d 337 (1985)
STATE of Louisiana, Appellee,
v.
Willie Lee ZENO, Appellant.
No. 16920-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*338 Sanders & Sanders by Martin S. Sanders, III, Winnfield, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Charles B. Bice, Dist. Atty., Kermit M. Simmons, Asst. Dist. Atty., Winnfield, for appellee.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
MARVIN, Judge.
Zeno appeals his conviction by a jury of aggravated battery for shooting a friend with a shotgun at close range. His primary contentionthat the jury was clearly wrong in not finding he was acting in self defensequestions the sufficiency of the evidence to convict. LRS 14:19, 21, 34. We affirm.
Zeno's other assignment arose when he was denied a continuance on the day of the trial. Zeno sought a continuance when the State gave him notice of intent under CCrP Art. 768 to use Zeno's handwritten inculpatory statement along with other Zeno statements at the trial. Zeno had not been informed of the existence of the handwritten statement in the State's answer to his earlier motion for a bill of particulars. The trial court denied the continuance, ruling that the State would not be allowed to use the handwritten statement "in any way" during the trial. This was not error. CCrP. Art. 729.5; Compare State v. Lee, 364 So.2d 1024 (La.1978).

FACTS
When viewed most favorably toward the State, the record establishes these facts:
The victim, Bobby Barnes, and others were at Zeno's home on the day of the shooting. An argument occurred between Zeno and Barnes during a domino game. After placing several dominoes belonging to Zeno in his pocket, Barnes left and went home. Zeno told his younger brother to go to the home of a relative and telephone police. A few minutes later, Zeno armed himself with a loaded shotgun and walked down the street toward Barnes' house, about 50 yards away. Zeno said he got the shotgun "to scare him to try to make him give me my dominoes back."
While Zeno was approaching, Bobby Barnes came out of his house with his shotgun. Barnes stated that his shotgun remained "broken" or open until he and Zeno were "right up on each other." They then cursed each other. Barnes struck the defendant in the chest with the butt of his shotgun two or three times. Seconds later, Barnes swung his shotgun at Zeno. Barnes testified he was not trying to hit Zeno with the gun but was just trying to "get him out the way." Zeno said, however, that Barnes swung the shotgun at his *339 head saying, "I'll knock your god damned head off."
Zeno ducked the swing of the gun, took a few steps backward, and shot Barnes in the left thigh from a distance of five or six feet. After Miranda warnings and in a recorded statement to police Zeno said, "I wasn't trying to kill him, I know where I was shooting him at." Barnes' left leg was amputated because of the shotgun wound.
On direct examination, Zeno said, "[B]ut I was scared at that point when he swung the gun at me because I thought he was trying to bust my head. And I ducked and jumped back and before I could catch myself I had shot him." On cross-examination, Zeno said:
A. Well, it happened so fast I ... I don't ... I don't really know. When he swung the gun around I ducked and jumped back and when he ... and by the time I got back to the position where I shot he had the gun down like that like he was fixing to bring it down.
Q. What does that mean, like he was fixing to bring it down?
A. Like he was going to get ready to point it.
There is no evidence that Barnes ever pointed his gun at Zeno. Barnes' shotgun was not loaded, and the jury could have concluded that Zeno should have known this fact. Barnes said that Zeno knew that there were no more shells for that shotgun because Zeno had shot the last two shells from the gun when he borrowed it to go hunting. Zeno stated that he "thought" he saw Barnes loading the gun while approaching him.

LAW
Resolution of factual contradictions and credibility issues are left to the resolution of the trier of fact in the criminal justice process. The jury could have concluded that Zeno provoked the confrontation by leaving his home and going toward Barnes' home armed with a loaded shotgun. LRS 14:21 reads:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
There is no evidence that Zeno tried to end the argument or withdraw. Even though Barnes struck the defendant in the chest with the butt of his shotgun and subsequently swung at the defendant with his shotgun, the defendant may still be considered as the initial aggressor and therefore, unable to claim self-defense. Compare State v. Stroud, 198 La. 841, 5 So.2d 125 (1941).
In light of this record, it was reasonable for the jury to conclude that the defendant did not act in self-defense.
The assumption that the jury might have considered either that Zeno withdrew from the confrontation or that he was not the aggressor who brought on the difficulty does not avail Zeno. When the use of force against another is justifiable self-defense under LRS 14:19, the jury must find that force to have been reasonable and apparently necessary to prevent the other person's offense.
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
LRS 14:19
See State v. Guinn, 319 So.2d 407 (La.1975).
Thus, the jury could have believed Barnes' version and could have found that Zeno knew that Barnes' gun was not loaded and that Zeno used unreasonable force in shooting Barnes at five-six feet.
*340 We need not choose between or resolve State v. Collins, 306 So.2d 662 (La.1975), and State v. Freeman, 427 So.2d 1161 (La. 1983), to decide who has what burden where self-defense is an issue. See State v. Ducote, 452 So.2d 1305 (La.App. 3d Cir. 1984), citing the views of both Collins and Freeman.
The broad standard of review is enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The relevant inquiry is whether, under the facts and circumstances of this case, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded either that the defendant failed to prove by a preponderance of the evidence that he was justified in shooting Barnes (Freeman) or that the State proved beyond a reasonable doubt that the defendant did not shoot Barnes in self-defense (Collins).
This burden of proof issue is not raised by either party in this appeal. Moreover, the evidence in this case is sufficient to support the jury's conclusion that the defendant did not shoot Barnes in self-defense under either standard.
We find no error in defendant's assignments and AFFIRM the conviction.
SEXTON, J., concurs.