605 So.2d 702 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Walter Guy BRASWELL, Defendant-Appellant.
No. 23672-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
Rehearing Denied October 22, 1992.
Daryl Gold, Shreveport, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Robert W. Levy, Dist. Atty., John F.K. Belton, Asst. Dist. Atty., Ruston, for plaintiff-appellee.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
The defendant, Walter Guy Braswell, was charged by amended bill of information with aggravated battery arising from a macing incident. La.R.S. 14:34. After a jury trial, he was found guilty of the lesser offense of simple battery. La.R.S. 14:35. The district court sentenced him to six months in jail and a fine of $350 plus costs; however, the court suspended the sentence *703 on payment of costs and placed Braswell on supervised probation for two years with special conditions. Braswell now appeals, urging the evidence was insufficient in that it failed to negate his claim of self defense. For the reasons expressed, we affirm.
The standard of review is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. State v. Mussall, 523 So.2d 1305 (La.1988). A credibility call among witnesses is fully within the jury's province. State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Holland, 544 So.2d 461 (La.App.2d Cir.1989). Thus we have said that in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Emerick, 499 So.2d 195 (La.App.2d Cir.1986).
Battery is defined as the intentional use of force or violence upon the person of another or the intentional administration of a poison or other noxious liquid or substance to another. R.S. 14:33; State in Interest of W.B., 461 So.2d 366 (La.App.2d Cir.1984). Simple battery is a battery committed without the consent of the victim. R.S. 14:35. Self-defense is defined as follows:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense against the property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
La.R.S. 14:19; State v. Landry, 381 So.2d 462 (La.1980); State v. Zeno, 469 So.2d 337 (La.App.2d Cir.), writ denied 474 So.2d 1303 (1985). When self-defense is claimed by the defendant in a homicide case, the state has the burden of proving beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Green, 483 So.2d 957 (La.1986); State v. Ruff, 504 So.2d 72 (La.App.2d Cir.), writs denied 508 So.2d 64, 65 (1987). The jurisprudence of non-homicide cases, however, does not clearly state who has the burden of proving self-defense and what that burden is. In State v. Freeman, 427 So.2d 1161 (La.1983), the Supreme Court indicated in dictum that the defendant in such a case may have the burden of proving self-defense by a preponderance of the evidence. The court in Freeman did not resolve the issue, choosing instead to analyze the evidence under both standards. This court has followed the both-standards approach in State v. Zeno, supra, although other courts have placed the burden on the defendant. See State v. Barnes, 590 So.2d 1298 (La.App. 1st Cir.1991), esp. fn. 4 and 5, detailing the split jurisprudence.
For purposes of our discussion today, we note that the trial court charged the jury under the more stringent standard. R.p. 245. The charge was delivered without objection from the state. We have therefore reviewed the evidence in light of the charge, requiring the state to negate self-defense beyond a reasonable doubt, and do not today resolve the jurisprudential double standard.
The incident arose from a dispute between neighbors. The victim, Clifford Arrington, was a retiree who had recently moved to Lincoln Parish. The record is not entirely clear, but Arrington had just built or was still building a home on property his wife inherited from her mother, Mrs. Keedy; another portion of the Keedy estate (the record does not reveal the exact portion) is owned by Arrington's brother-in-law, but Arrington had control over it. The brother-in-law's lot is adjacent to defendant Walter Braswell's property. A road called Garwood Drive runs roughly *704 along the south border of the Keedy property and dead ends; according to Arrington, Braswell has a servitude of passage across the brother-in-law's property from the road to his (Braswell's) home. Apparently Arrington wanted to run a driveway from the servitude to his new house, but this plan involved removing some trees from the servitude. The relationship between the new neighbors grew strained; Braswell testified that Arrington threatened him regularly. Braswell finally obtained a restraining order to keep Arrington from doing any acts on the servitude that impeded Braswell's passage.
In January 1990 Arrington hired a logger, Don Upchurch, to cut several trees in the right-of-way. Upchurch and his son came out early on a Sunday morning to perform the work; Arrington stood nearby to watch. When he heard the saws and skidder running, Braswell also came out to watch and take pictures of the cutting.
Both Arrington and Braswell have serious health problems. Arrington has suffered a major stroke which left him with a loss of sensation and a speech impediment, and led to his retirement; he also has arthritis and, at times, walks with a cane. Everyone described him as a large person. Braswell, also a retiree, has had at least two heart attacks (his mother-in-law said four) and suffers from hypertension; he also testified he has an aneurysm in his chest.
Each side's version of events is different. According to Arrington, Braswell got very upset when part of a falling tree struck the limbs of a peach tree located south of Garwood Drive on property owned by a third person. Arrington testified that Braswell was taunting him and the Upchurches, "hurrahing, using some bad language, running kinda up and down the line, just literally acting kind of crazy." Upchurch was having trouble cutting a large tree and was distracted by Braswell's conduct. Arrington said he asked Braswell to keep his distance so nobody would get hurt by a falling tree; he testified he said this in a normal, civil tone of voice and without any threatening gestures. He testified that Braswell then pulled a pistol on him (Don Upchurch said it was a .25 cal. revolver); as he was scurrying away to get out of danger, he felt a cold spray on his face. At first he thought he had been hit with a water pistol, but suddenly his eyes began to sting. He had been hit with a spray of mace. Braswell ran up to him and sprayed him several times in the face, ears and mouth, causing him to gasp for breath and fall to the ground helpless. The Upchurches hefted him into their truck and brought him to Lincoln General Hospital, where he remained for over 24 hours. Arrington's testimony was essentially corroborated by the Upchurches.
Braswell denied that he was strutting along the property line with his chest out; he said he merely came out to observe and take pictures to assure that no damage was done. He denied that Arrington asked him to step back; he testified that Arrington simply started cursing and lunged at him. He denied he was carrying a firearm, but admitted he had a can of macelike spray that Sheriff Houck had given him for protection. Braswell testified that he used the spray to avert rough contact; any jolt to the aneurysm in his chest might be fatal. He said the first spray "went high," and he sprayed a few more times because Arrington would whirl around as if to come back for another try. He admitted that the Upchurches loaded Arrington into the truck and took him away.
This synopsis only scratches the surface of the conflicts in the testimony. At trial, the defense made much of the fact that although Arrington and Don Upchurch insisted Braswell pulled a gun, Deputy Murad could not recall anyone mentioning a gun when he interviewed the witnesses, and Braswell flatly denied he had one. Braswell attempted to corroborate his testimony with that of his wife, Marie, and his mother-in-law, Mrs. Cole, who claimed they were standing not too far behind Braswell and saw the whole incident. Arrington and both the Upchurches admitted that Marie had been standing nearby before the incident, but testified that she went back inside before the spraying occurred; they *705 also insisted that Mrs. Cole was not present.
Given the major conflicts in the testimony, we must defer to the jury's resolution. The jury obviously accepted the testimony of Arrington and the Upchurches setting out the elements of the offense but rejected that of Braswell and his witnesses that the defendant maced the victim in self-defense. State v. Trosclair, supra; State v. Loyd, 425 So.2d 710 (La.1982); State v. Zeno, supra. It was rational to conclude that Arrington did not lunge at Braswell in a menacing manner; his physical condition and partial incapacity make this most unlikely. Even if the jury felt that Arrington's bulky size, unfriendly demeanor and history of threats were some provocation, it certainly could have concluded that one squirt of mace was sufficient. For Braswell to step over the property line and drench him with the spray obviously exceeded the statutory standard of "reasonable and apparently necessary" force to prevent the perceived threat.
Viewed in light most favorable to the state, the evidence is sufficient to convince any rational trier of fact beyond a reasonable doubt that Braswell used force or violence upon Arrington, and that Braswell's conduct was either not justified by the need to prevent Arrington from committing a forcible offense against Braswell, or was greater than necessary to prevent it. La. R.S. 14:19, 33, 35.
We have also reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2).
Walter Guy Braswell's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, HIGHTOWER and VICTORY, JJ.
Rehearing denied.