647 So.2d 1224 (1994)
STATE of Louisiana, Appellee,
v.
Joseph FOSTER, Jr., Appellant.
No. 26143-KA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1994.
Rehearing Denied January 19, 1995.
*1226 Joseph Foster, Jr., in pro. per.
Richard Ieyoub, Atty. Gen., Baton Rouge, James M. Bullers, Dist. Atty., Minden, for appellee.
Before SEXTON and NORRIS, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
The defendant, Joseph Foster, Jr., was charged with one count each of armed robbery, second degree kidnapping and aggravated kidnapping, violations of LSA-R.S. 14:64, 14:44.1 and 14:44 respectively. After a jury trial in which he represented himself, he was found guilty as charged. The trial court then sentenced him to life imprisonment for the aggravated kidnapping offense, fifty years imprisonment for the armed robbery offense, and forty years imprisonment for the second degree kidnapping offense. The defendant, pro se, appealed both his conviction and sentence. We affirm.
The defendant assigns one hundred and eight assignments of error as the basis of this appeal. In the published portion of this opinion, we address the assignments of error relating to the sufficiency of the evidence and pre-trial disclosure of alibi witnesses. In an unpublished appendix which comprises part of the official record in this case, we address the defendant's other assignments of error, which, in our opinion, do not merit publication because they involve legal issues governed by established principles of law.

FACTS
On July 20, 1992, at approximately 12:30 a.m., a man wearing a ski mask and gloves robbed the Exacta Inn Motel in Minden, Louisiana, at gunpoint. At the time, Walter Kilgore was on duty as the motel's night manager. After forcing Kilgore to give him money from the cash register, the man forced Kilgore to leave the motel with him and walk toward Interstate 20. After they walked a short distance, the man released Kilgore. Kilgore then walked back to the motel, called the police, and gave them a description of his assailant.
Within minutes after Kilgore called the police, Officers Hank Haynes and Harold Robinson arrived at the scene. They immediately began searching the area, and Officer Robinson noticed a man fitting the robber's description walking across Highway 7. The two officers then drove toward the man, and, as he began fleeing across a field, they ordered him to stop. They shined bright lights on him, and, as he crossed a fence to escape into some woods, he looked back at the officers. He was not wearing a ski mask, and Officer Robinson saw his face. Once he disappeared into the woods, Officers Haynes and Robinson waited for a team of bloodhounds before beginning a manhunt.
At approximately 5:45 a.m. that same morning, Delbert McCrary was parked in Hamburger Happiness' parking lot which is located in Dixie Inn, Webster Parish, Louisiana, approximately three miles from the Exacta Inn Motel. McCrary was sitting in the driver's seat of his truck waiting for his car pool. His door was open. Without warning, a man appeared and stuck a gun to McCrary's side and told him to move over. *1227 McCrary identified that man as the defendant.
The defendant then drove McCrary to a wooded area in Bossier Parish, Louisiana. He assured McCrary that as long as he cooperated, he would not get hurt. He ordered McCrary out of the truck and told him that he had to tie him up so he would have enough time to escape. The defendant used the victim's shoe strings, a long-sleeved shirt and the truck's seat belts to tie McCrary's hands and feet. Then, while standing behind McCrary and gagging McCrary's mouth with a piece of the shirt, the defendant stabbed McCrary in the back. After that, the defendant got into the truck and attempted to run over McCrary. When the truck hit McCrary, it allowed him to free one of his legs. McCrary then escaped to a nearby home and called the police.
At approximately 9:00 a.m., a fresh team of bloodhounds was called out to the Bossier Parish area to continue the manhunt. Two hours later, they found the defendant hiding in a densely wooded area. He had partially covered himself with pine straw. A gun was found lying by his side.

DISCUSSION

SUFFICIENCY OF THE EVIDENCE
Assignment of Error No. 10:
First, we address the defendant's sufficiency of the evidence claim. State v. Hearold, 603 So.2d 731 (La.1992). He claims the state did not present sufficient evidence to support his conviction, and, thus, the trial court erred in denying his motion for post verdict judgment of acquittal.
LSA-C.Cr.P. Art. 821 B provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. That is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App.2d Cir.), writ denied, 604 So.2d 973 (La.1992).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App.2d Cir.), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App.2d Cir.1988).
In the instant case, the defendant was convicted for the armed robbery of Walter Kilgore at the Exacta Inn Motel, the second degree kidnapping of Walter Kilgore, and the aggravated kidnapping of Delbert McCrary. Regarding the armed robbery and second degree kidnapping convictions, those two crimes occurred at the same time and place. Therefore, we review those offenses for sufficiency of the evidence together.

Armed Robbery and Second Degree Kidnapping Convictions
The state can prove the defendant committed an act of armed robbery by showing that he took something of value belonging to another from the person of another or that was in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. State v. Brown, 618 So.2d 629, 636 (La.App.2d Cir.), writ denied, 624 So.2d 1222 (La.1993); LSA-R.S. 14:64. Also, the state can prove the defendant committed an act of second degree kidnapping by showing that he forcibly seized and carried a person from one place to another, while armed with a dangerous weapon. LSA-R.S. 14:44.1 A(5) and B(1). See *1228 State v. Arbuthnot, 625 So.2d 1377, 1383-84 (La.App. 1st Cir.1993).
At trial, the Exacta Inn Motel's night manager, Walter D. Kilgore, testified that a masked man armed with a pistol forced him to hand over $470.00 from the cash register at the Exacta Inn Motel. After that, Kilgore testified, the man forced him to leave the motel. The man took Kilgore out the motel's back door, walked him around the corner of the building, and continued in the direction of the interstate. When they reached a building in a dark bushy area, the man released Kilgore, but only after telling him to wait there for five minutes so he could escape. The man then disappeared into the brush.
Kilgore waited the five minutes and then walked back to the motel. He called the police and told them what had happened. He gave them a description of his assailant's clothing and build. He described the man as tall, slender and last seen walking toward Interstate 20.
Officers Haynes and Robinson were the first police officers to arrive at the scene. When they arrived, they immediately began searching the vicinity. Within minutes, they spotted a man fitting the assailant's description walking across Highway 7 near Interstate 20. They gave chase and the man, before disappearing into the woods, turned around and looked toward them. He was not wearing a mask, and Officer Robinson testified he saw a full facial view of the man and identified him at trial as the defendant.
Also, Officer Haynes testified he and other officers tracked a trail of footprints for approximately three miles. He said the footprint trail began at the back door of the Exacta Inn Motel. Officer T.C. Bloxom, Jr., Chief of Minden Police, made two casts of those footprints, and he also made a cast of the boots the defendant wore at the time of his arrest. Officer Bloxom compared the casts taken from the footprint trail and the defendant's boots and testified that they matched.
Moreover, Deputy Gary L. Valentine of the Webster Parish Sheriff's Office who assisted in the investigation testified he found the defendant's wife's car hidden behind some trees near the Exacta Inn Motel. Even more compelling is the fact that the defendant admitted to parking the car there. Finally, Deputy Don Eric Shelley of the Webster Parish Sheriff's Office who also helped in the investigation testified that when they arrested the defendant, they found a handgun in the defendant's possession.
After reviewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found beyond a reasonable doubt that the defendant committed an armed robbery in that the defendant, while armed with a handgun, took money from the Exacta Inn Motel by threatening Walter Kilgore with the gun. We also find a rational trier of fact could have found beyond a reasonable doubt that the defendant committed a second degree kidnapping in that the defendant, while armed with a handgun, forcibly seized and carried Walter Kilgore from the motel into a dark bushy area behind the motel.

Aggravated Kidnapping Conviction
Next, regarding the aggravated kidnapping conviction, the state can prove the defendant committed that offense by showing that he forcibly seized and carried a person from one place to another with the intent to force the victim to grant any advantage or immunity in order to secure a release of the person under the offender's control. LSA-R.S. 14:44. In this context, "[t]he word `advantage' means gain, benefit, profit, superiority or favored position; the noun `immunity' means freedom or exemption from penalty, burden, duty or evil." State v. Edwards, 287 So.2d 518, 524 (La.1973). In determining whether an aggravated kidnapping offense occurred, the crucial question is whether the defendant sought to obtain an advantage or immunity by playing upon the victim's fear and hope of eventual release in order to gain compliance with his demands. See State v. Arnold, 548 So.2d 920, 925 (La.1989). The element of the crime aggravated kidnapping, requiring the kidnapper to force the victim to grant an advantage or immunity in order to secure his release, is met by evidence of the kidnapper's intent to extort the advantage or immunity by playing upon the victim's hopes of release. See Id.
*1229 In the instant case, Delbert McCrary testified he was sitting in his truck waiting for his car pool. McCrary said a man stuck a gun to his side and forced him into the passenger seat of the truck. McCrary identified the man as the defendant, both in a photographic line-up and at trial.
McCrary further testified that the defendant, after securing possession of the truck, threatened him by telling him he would not be hurt if he cooperated with him and did not make any sudden moves in an attempt to get away. The defendant then drove McCrary to a wooded area in Bossier Parish.
After they arrived in the woods, McCrary, to the defendant's gratification, was forced to get out of the truck, take off his own tennis shoes, and remove the shoestrings from them. The defendant then tied McCrary up while telling McCrary he was only doing it so McCrary would give him time to get away. McCrary complied with the defendant's demands because he trusted the defendant would not hurt him as long as he cooperated. However, to McCrary's surprise, the defendant stabbed him in the back.
In this case, evidently the only reason the defendant kidnapped McCrary was that he intended to prevent McCrary from immediately informing the police about the car-jacking and his identity. Viewed in that light, it becomes clear the defendant intended to force McCrary to grant him an advantage or immunity (i.e., time to escape and, thus, freedom from detection and punishment) in order to secure a release. The clear implication of the defendant's behavior is that McCrary would be released safely only if he acceded to the defendant's demand to cooperate and be tied up so the defendant could escape.
After reviewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have found beyond a reasonable doubt that the defendant committed an aggravated kidnapping in that he forcibly seized and carried McCrary from a parking lot to a wooded area in Bossier Parish with the intent to force McCrary into cooperating with him by not attempting to escape and alert the authorities, to the advantage of the defendant who could not have, without the threat, otherwise lawfully secured such an advantage willingly from the victim.

Mistaken Identity Defense
Although he acknowledges McCrary positively identified him as the culprit of the aggravated kidnapping and that such evidence by itself is sufficient to establish his identity, the defendant claims other evidence irreconcilably contradicts McCrary's identification. At trial, the defendant introduced an arrest record from the Webster Parish Sheriff's Department. At that time, both he and the state stipulated the facts contained in the record were true and correct. The defendant now claims the record shows he was arrested on July 19, 1992, thus making it impossible for him to kidnap McCrary on July 20, 1992.
This claim is meritless. Not only did several deputies testify they apprehended the defendant on July 20, 1992, but, even if the Webster Parish Sheriff's Department did arrest the defendant on July 19, 1992, that fact alone does not prove he remained there on July 20, 1992.
Moreover, the defendant's arrest date, as indicated by the arrest record, is not clear. The box where an arrest date is supposed to be indicated on that record contains what appears to be a hand written notation "7-27-92." Then, at the bottom of that arrest record is what appears to be another hand written notation indicating a "7-19-92" arrest date. Given the internal contradiction within the document itself, the finders of fact apparently chose not to give much weight to it and decided to believe the several witnesses who testified at trial that the defendant was arrested in the Bossier Parish woods on July 20, 1992.

Intoxication and Temporary Insanity Defenses
In the alternative, the defendant claims he was intoxicated at the time he committed these offenses. He contends he accidentally ingested four doses of LSD-25 which caused him to hallucinate and deprived him of his ability to distinguish between right and wrong. He reasons, because his testimony was unrebutted by any other *1230 evidence, the state failed to prove beyond a reasonable doubt that his intoxication did not directly cause him to commit the offenses.
"Involuntary intoxication is a defense if the `condition is the direct cause of the commission of the crime.'" State v. Rives, 407 So.2d 1195, 1197-98 (La.1981). This court's authority to review facts does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). Although one witness's testimony, if not inconsistent with other evidence and believed by the trier-of-fact, is sufficient to support a requisite factual conclusion, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). Reviewing courts accord great deference to juries' decisions to accept or reject the testimony of witnesses. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La. 1987).
In this case, the only evidence supporting this defense is the defendant's own testimony. There is no physical evidence showing the defendant ingested LSD-25 or that he hallucinated. Nor is there any evidence showing LSD-25 directly caused him to commit these crimes. The trier-of-fact, who obviously rejected the defense, was neither required to believe the defendant's self-serving statements nor were they required to find that his intoxicated condition, if any, directly caused him to commit these offenses. State v. Rives, supra. A reasonable factfinder could easily have concluded the defendant's intoxicated condition did not directly cause him to commit these crimes.
Finally and also in the alternative, the defendant argues that, at the time he committed these offenses, he was temporarily insane due to a combination of his post traumatic stress disorder and involuntary intoxication. Like his previous defense, he contends his testimony in this regard is unrebutted by the physical evidence and, therefore, must be taken as true. Thus, he concludes, the state did not prove beyond a reasonable doubt that he was not insane at the time he committed the offenses.
A defendant is presumed sane, and it is he who has the burden of establishing his insanity defense. LSA-C.Cr.P. Art. 652 and LSA-R.S. 15:432. In order for him to prove his insanity defense, he must show that because of a mental disease or mental defect he was incapable of distinguishing between right and wrong. State v. Pier, 530 So.2d 1253 (La.App.2d Cir.1988), writ denied, 536 So.2d 1234 (La.1989); LSA-R.S. 14:14. Evidence of intoxication is not pertinent to this issue, whereas victim testimony is. State v. Shields, 444 So.2d 287, 293 (La.App. 1st Cir.1983), writ denied, 446 So.2d 312 (La.1984). Whether the defendant was insane when he committed the offense is a fact question to be decided by the trier-of-fact. State v. Rollins, 351 So.2d 470 (La.1977).
On appeal, the relevant inquiry is whether the defendant adduced evidence of his insanity such that a rational trier-of-fact viewing that evidence in the light most favorable to the prosecution, could conclude the defendant did not prove by a preponderance of the evidence that he was insane at the time he committed the offense. State v. Widenhouse, 582 So.2d 1374 (La.App.2d Cir.1991), writ denied, 586 So.2d 567 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992). As noted above, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Braswell, supra; State v. Rogers, supra.
In the instant case, other than the defendant's own self-serving testimony, no evidence was introduced to show the presence of a mental disease or defect in the nature of insanity. On the other hand, evidence supporting his sanity is the fact that he concealed his car to avoid detection, he ran from the police to escape prosecution, and he used his knife to injure McCrary rather than his gun which would have drawn attention to him. More important, the first victim, Kilgore, testified that he did not notice the defendant exhibiting any nervous behavior.
Apparently, the trier-of-fact chose not to believe the defendant's testimony. Based on the evidence, we find a rational trier-of-fact viewing it in the light most favorable to the prosecution, could conclude the defendant did *1231 not prove by a preponderance of the evidence that he was insane at the time he committed the offenses.
This assignment of error lacks merit.

DISCOVERY

Assignment of Error No. 13:
In this assignment of error, the defendant contends the trial court erred in denying his Motion for New Trial. He claims a new trial should have been granted because the trial court committed reversible error when it refused to preclude the testimony of Officer Robinson, a witness the state used in its case in chief to establish his presence at the Exacta Inn armed robbery and second degree kidnapping crime scene. The defendant asserts that, although he complied with the state's discovery request by disclosing the names and addresses of his alibi witnesses, the state failed to reciprocate as required by LSA-C.Cr.P. Art. 727 B and was allowed to introduce testimony that should have been excluded from the trial.
The discovery rules in LSA-C.Cr.P. Art. 716 et seq. are intended to eliminate unwarranted prejudice which could arise from surprise evidence. State v. White, 430 So.2d 171, 174 (La.App.2d Cir.), writ denied, 433 So.2d 1055 (La.1983). The purpose of LSA-C.Cr.P. Art 727 specifically relates to alibi defenses. See United States v. Myers, 550 F.2d 1036, 1042 (5th Cir.1977) (the court interpreted Federal Rule of Criminal Procedure 12.1 which is identical to LSA-C.Cr.P. Art 727) and State v. Bias, 393 So.2d 677, 678 (La.1981). Failure to comply with LSA-C.Cr.P. Art 727 does not automatically require the exclusion of alibi evidence; when a party fails to comply with this article, the trial court may exclude or admit the undisclosed alibi evidence after properly exercising its discretionary power. LSA-C.Cr.P. Art. 727 D and E; State v. Bias, supra. In determining how to exercise its discretionary power under LSA-C.Cr.P. Art. 727 D, the trial court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for the nondisclosure, (3) the extent to which the harm caused by the nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case. State v. Bias, supra at 678-79 (quoting United States v. Myers, supra).
In the instant case, we find the trial court's failure to exclude Officer Robinson's testimony did not substantially prejudice the defendant. Defendant contends that he was prejudiced by the State's failure to disclose Officer Robinson's name in that he was unable to investigate the scene of the sighting. Under Article 727 B, the State is only required to supply the defendant with the name and address of the witness upon whom the state intends to rely to establish the defendant's presence at the scene of the offense. The State is not required to supply the defendant with the substance of the witness' testimony. Therefore, even if the State had supplied the defendant with the name and address of Officer Robinson, he would not have had the information necessary to investigate the scene of the sighting. Defendant also alleges that if he had been given Officer Robinson's name and address he would have discovered that Officer Robinson was a "tax cheat and a drug dealer" and would have used this information to impeach him. The defendant made no allegation that he possessed this information in the trial court. Because the appeal record is inadequate to determine if these claims have merit, we decline to address these claims. If the defendant can prove these allegations concerning Officer Robinson, the appropriate remedy would be to file for post-conviction relief under LSA-C.Cr.P. Art. 930.3(1). At that time, the trial court could hold an evidentiary hearing to determine whether the allegations have merit and whether the information would have influenced the jury to such an extent as to change the outcome of the trial.
In addition, our review of the record shows there was a substantial amount of other evidence placing the defendant at the crime scene. The investigating officers found footprints at the crime scene that matched the defendant's footwear, and they also found the defendant's wife's car hidden in the immediate area. More important, the defendant *1232 himself even admitted he parked the car there. Additionally, at the time of his arrest, the defendant possessed a small handgun which Kilgore testified resembled the one his assailant used to rob and kidnap him at the Exacta Inn. Finally, McCrary, the victim of the subsequent aggravated kidnapping which occurred only three miles from the Exacta Inn, positively identified the defendant as the man who had kidnapped him. McCrary also testified that the defendant stated he had been running from the police that night. Thus, a review of the record shows Officer Robinson's testimony concerning the defendant's presence at the crime scene was supported by other evidence which mitigated any prejudice caused by the state's nondisclosure, and there was substantial evidence to support the defendant's guilt.
Furthermore, Officer Robinson's testimony did not substantially prejudice the defendant's alleged alibi defense because the defendant did not advance an alibi defense at trial other than by offering his own self-serving testimony. Moreover, the record shows the defendant never requested a continuance to conduct additional discovery which would have eliminated any potential prejudice. LSA-C.Cr.P. Art. 729.5; See State v. Feeback, 414 So.2d 1229, 1234-35 (La.1982). These factors suggest the defendant was in bad faith in asserting his alibi defense. These factors also show that Officer Robinson's testimony did not rebut the defendant's alibi defense other than by contradicting the defendant's self-serving testimony.
Therefore, considering the lack of prejudice resulting from the State's non-disclosure, the defendant's lack of alibi evidence, and the weight of the other evidence against the defendant, we do not find that the trial court abused its discretion in allowing Officer Robinson to testify. Accordingly, the trial court did not err in denying the defendant's Motion for New Trial.
This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons and the reasons expressed in an appendix, the defendant's convictions and sentences are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY and BROWN, JJ., and PRICE, J. Pro Tem.
Rehearing denied.