745 So.2d 800 (1999)
STATE of Louisiana, Appellee,
v.
Arthur Dean BRADFORD, Appellant.
No. 32,747-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*802 Amy C. Ellender, Louisiana Appellate Project, Mer Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Donna F. Hall, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, C.J., and BROWN and PEATROSS, JJ.
NORRIS, Chief Judge.
The defendant, Arthur Dean Bradford, appeals his conviction of distribution of a Schedule II controlled dangerous substance, a violation of La. R.S. 40:967 A (1). Following the denial of his motion for judgment of acquittal, the district court sentenced Bradford to five years at hard labor without benefit of parole, probation or suspension of sentence. He appeals, urging that the evidence was insufficient to support his conviction for distribution, and alternatively, that he was entrapped. For the reasons set forth herein, we affirm.

Facts
Bradford was arrested as the result of a buy-bust undercover operation conducted by the Shreveport Police Department on August 7, 1998 in the Lakeside neighborhood of Shreveport. A buy-bust operation occurs when an undercover officer is equipped with an electronic transmitting device and drives through known and documented drug areas attempting to purchase narcotics from street dealers with photocopied SPD buy funds. The officer is followed by an arrest and surveillance team, which monitors the undercover officer's activities and makes the eventual arrest.
Officer Bryan Wynn of the SPD testified at trial that he was working street level interdiction on that date and made the buy from the defendant. He was dressed in blue jeans and a t-shirt, was wired with an electronic transmitter system, and was driving a white, unmarked Toyota pick-up truck.
Wynn was in the westbound lane of the 2400 block of Laurel Street when one member of a group of black males standing in front of a house flagged him down by either whistling or yelling out to him. Wynn testified that after he turned around and went back to where the group was located, Bradford left the group and approached Wynn's vehicle. The two men then engaged in a brief conversation which began when Wynn asked the defendant, "Is anyone doing anything?" Bradford responded by asking Wynn, "What do you need?" Wynn told the defendant that he wanted a "twenty cent piece," referring to $20.00 worth of crack cocaine.
Once Wynn asked for the crack, Bradford got into Wynn's passenger seat, and directed him to drive to the 1700 block of Harvard Street, where Bradford told him to pull over near a small grocery/convenience store. After Wynn gave Bradford $20.00 of the SPD's buy money, Bradford exited the vehicle and walked north on Harvard Street, crossed Laurel and went to either the third or fourth house. He *803 remained there for approximately 3-5 minutes and then exited the same yard and returned to the truck.
According to Wynn, Bradford got back into the truck and laid a white paper towel on the seat between them. When Wynn picked it up and opened it, he saw two small pieces of suspected crack cocaine. Wynn then asked the defendant if it was "good stuff," which was the pre-arranged signal for the arrest team to approach. As the arrest team came from behind the truck, Bradford attempted to exit, but was stopped and placed under arrest.
Wynn accompanied the defendant and the rest of the undercover team to the police station where he field tested the suspected crack cocaine. It tested positive for cocaine, .2 grams, and Bradford was arrested for distribution of a schedule II CDS. The contraband was subsequently sent to the Northwest Louisiana Crime Lab where it tested positive for cocaine.
Officer J.C. Brook corroborated Wynn's testimony at trial. He was a member of the arrest team and he monitored the transaction between Bradford and Wynn via the electronic transmitting device that Wynn was wearing. He heard Wynn say that he had been flagged down by an unknown black male subject. Brook, along with Officers Mark Davis and David Rachia, followed Wynn and the defendant in a white, unmarked van until they were given the bust signal by Wynn ("is this good stuff).
Brook also testified that Bradford was advised of his Miranda rights by the officers once in custody. Brook testified that after being advised of his rights, Bradford stated that he was trying to "help out" the undercover officer to buy drugs so that he could buy some beer, because he was an alcoholic.
In his defense, Bradford took the stand at trial, offering a contradictory version of the events. He testified that he was standing and talking with three other men at 2325 Laurel Street when another man, who Bradford contended was not Wynn, approached them in a white pick-up and asked them, "Where can I get something to smoke?" The defendant testified that he asked this person, "What are you talking about? Crack?" The man, who Bradford maintained was not Wynn, said, "Yes."
Bradford further testified that he agreed to help this man buy crack as long as he could smoke some of it with him. According to Bradford, at that point, he got into the truck and the following conversation took place:
Well, when I got into the car I said, "I'm not going to smoke dope with no police officer. Are you a police officer." He said, "No, I'm not a police officer." I wouldn't be caught dead smoking no dope with no police officer. He said, "No, man, I'm not a police officer."
Bradford testified that this unknown man told him to get two rocks of crack cocaine to smoke. After the defendant again asked if he was a police officer and the man reiterated that he wasn't, the man gave him $20.00 to buy the crack.
According to Bradford, after he got the crack and brought it back to the truck, he never had a chance to actually get back into the truck and hand the crack to the man or even show it to him because after the man asked him if it was good stuff, the arrest team converged on him. He further claimed that at the time he was arrested, the crack was still in his hand.
Following a bench trial held on December 4 and 7, 1998, the district court found Bradford guilty of distribution of a Schedule II CDS. Following the denial of the defendant's motion for post-judgment verdict of acquittal, the trial court sentenced Bradford to five years at hard labor without the benefit of parole, probation or suspension of sentence. This appeal followed.

Discussion
The constitutional standard of review of the sufficiency of the evidence to support a conviction is whether, when *804 viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State v. Morris, 521 So.2d 1214 (La.App. 2d Cir.), writ denied, 530 So.2d 80 (1988). In doing so, an appellate court is required to review the evidence from the perspective of a hypothetical rational trier of fact in determining whether an unconstitutional conviction has occurred, but not to assess credibility anew or re-weigh evidence. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165 (Jackson standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder); State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Mussall, 523 So.2d 1305 (La.1988).
This court's authority to review findings of fact in a criminal case is therefore limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). As such, we accord great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987). In fact, absent internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual finding. State v. Gradick, 29,231 (La.App.2d Cir.01/22/97), 687 So.2d 1071; State v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/1/96), 682 So.2d 760; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
La. R.S. 40:967 A(1), inter alia, proscribes distribution of a controlled dangerous substance:
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II.
On appeal, Bradford initially argues that although he was the individual involved in this transaction, he lacked the requisite intent to distribute crack cocaine, thereby failing to meet the requirements for distribution. Instead, Bradford claims that it was his intent merely to obtain the crack for the "guy" so that they could smoke it together. In addition, Bradford contends that he never "distributed" the cocaine because the crack was still in his hands when he was arrested and thus he was unable to complete the transaction. Alternatively, Bradford argues that he was entrapped into becoming involved in this transaction with the police officer because it was the police officer who initiated the conversation.
The evidence presented at trial to convict Bradford of distribution of cocaine in violation of La. R.S. 40:967, if viewed under the Jackson v. Virginia standard, is sufficient to prove that he distributed the cocaine. La. R.S. 40:961(13) defines "distribution" as "to deliver a controlled dangerous substance[.]" The statute continues to define a "distributor" as "a person who delivers a controlled dangerous substance[.]" Id. "Deliver" is defined in La. R.S. 40:961(10) as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." Jurisprudence has further defined "deliver" as to include transferring possession or control. State v. Martin, 310 So.2d 544, 546 (La.1975); State v. Simon, 607 So.2d *805 793 (La.App. 1st Cir.1992), writ denied, 612 So.2d 77 (1993), overruled on other grounds, State v. Celestine, 671 So.2d 896 (La.1996).
A defendant is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipients. State v. Cummings, 95-1137 (La.2/28/96), 668 So.2d 1132, 1135; State v. Manning, 30,809 (La.App. 2 Cir. 6/24/98), 715 So.2d 668; State v. Hubbard, 30,604 (La.App. 2 Cir. 4/8/98), 711 So.2d 393. The State must show (1) "delivery" or "physical transfer"; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. State v. Manning, supra. In addition, an intermediary who arranges or facilitates the transfer of narcotics to a buyer can be charged and punished as a principal in the act of distribution. State v. Celestine, supra; State v. Goins, 568 So.2d 231 (La.App. 3rd Cir.1990), writ denied, 573 So.2d 1117 (La.1991); State v. Parker, 536 So.2d 459 (La.App. 1st Cir. 1988), writ denied, 584 So.2d 670 (La.1991)
Although intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Sepulvado, 93-2692 (La.04/08/96), 672 So.2d 158, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996). In the present case, Bradford's intent to distribute cocaine is manifest through his actions; particularly by: 1) his approaching the officer who was cruising a known drug area; 2) his voluntarily entering the vehicle after the officer expressed a desire to purchase crack cocaine; 3) his directing the vehicle to a drug supplier; 4) his voluntary acceptance of the SPD buy money for the express purpose of purchasing cocaine from his supplier; 5) his obtaining of the cocaine from an apparent source; 6) his returning with the cocaine; and 7) his delivery of the cocaine to Wynn. As such, there is ample evidence for a rational trier of fact to conclude that Bradford intended to distribute cocaine as that term is defined by the statutes and case law. Wynn testified that the defendant approached him, led him to an area where he could buy drugs, took his money, bought the crack, and brought it back to Wynn in completion of the transaction. This is clearly enough evidence to meet the intent portion of the crime. To the extent that Bradford's testimony conflicted with the officers on this point, this constitutes a finding of fact which is not reversible absent manifest error, which we do not find.
Similarly, we find no error in the district court's rejection of Bradford's contention that delivery of the cocaine was not accomplished, particularly in light of the credible testimony of the police officers. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support a defendant's conviction. State v. Braswell, supra, and citations therein; State v. Gradick, supra. This is equally applicable to the testimony of undercover drug agents. State v. Anderson, 30,306 (La. App.2d Cir.1/21/98), 706 So.2d 598; State v. Martin, 29,717 (La.App.2d Cir.9/24/97), 702 So.2d 739, writ denied 97-2562 (La.1/30/98), 709 So.2d 703; State v. Daniels, 607 So.2d 620 (La.App. 2d Cir.1992). The district court's decision to credit the officers' testimony and not Bradford's was within its discretion and therefore not in error.
In the alternative, Bradford does not deny that he sold cocaine on the date in question, but rather that he was the victim of entrapment by Wynn, a state agent. In so doing, he claims that there was insufficient evidence upon which to base his conviction, for he was induced by the undercover officer to commit the crime.
It is well established that entrapment occurs when a state agent, to obtain evidence of the commission of an offense, *806 solicits, encourages, or otherwise induces another person to engage in conduct constituting an offense which he is not otherwise predisposed to commit. State v. Brand, 520 So.2d 114 (La.1988); State v. Batiste, 363 So.2d 639 (La.1978); State v. Tate, 593 So.2d 864 (La.App. 2d Cir.1992). The entrapment defense consists of two elements: 1) an inducement by a state agent to commit an offense, and 2) lack of predisposition to commit the offense on the part of the defendant. State v. Kerrigan, 27,846 (La.App.2d Cir.4/3/96), 671 So.2d 1242; United States v. Hudson, 982 F.2d 160 (5th Cir.1993).
Thus, the burden of proof is on the defendant to raise the affirmative defense of entrapment and to prove, by a preponderance of the evidence, that a state agent induced him to commit the crime. Once the defendant meets this burden, the state has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement. State v. Kerrigan, supra; Jacobson v. United States, 503 U.S. 540, 548-49, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).
Whether a government agent induced an otherwise innocent person into committing a crime is a question to be resolved by the trier of fact. State v. Brand, 520 So.2d 114 (La.1988); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). On appeal, contentions of entrapment are also reviewed under the standard established in Jackson v. Virginia, supra.
In the instant case, the trier of fact could have clearly found that the defense of entrapment was not established. The evidence shows that Bradford was predisposed to sell drugs, as evinced by his willingness to provide drugs to Officer Wynn, and that he apparently had an available supplier of cocaine. Further, the testimony of all concerned indicates that Bradford was not badgered or coerced by the officer to commit a crime which he would otherwise not commit. Tate, supra. Officer Wynn merely provided Bradford with an opportunity to commit a crime which he was obviously ready, willing, and able to commit. The entrapment defense will not be recognized in circumstances, such as this, when a law enforcement official simply furnishes a defendant with an opportunity to commit a crime to which he is predisposed. Brand, supra; State v. Moody, 393 So.2d 1212 (La.1981).
The trial judge found that the defendant was predisposed to commit the crime and was not entrapped. This is a question for the trier of fact and should not be disturbed absent manifest error which is not present. This assignment therefore is without merit.

Conclusion
The conviction and sentence are affirmed.
AFFIRMED.